OPINION OF THE COURT
Herman Cahn, J.
Motions numbered 5, 6, and 7 on the calendar of July 15, 1991 are consolidated for disposition.
By separate motions, defendants New York Football Giants, Inc. (N. Y. Giants), New York Jets Football Club, Inc. (N. Y. Jets), and Paul Tagliabue (on behalf of the National Football League [NFL], an unincorporated association) seek an order, pursuant to CPLR 7503 and/or the Federal Arbitration Act (9 USC § 1 et seq.), staying this action and compelling arbitration of all disputed claims. Plaintiffs Joseph Morris and Michael Shuler cross-move for an order, in the event this court submits the dispute to arbitration, appointing a neutral and unbiased arbitrator.
This action arises out of a dispute between two professional football players and their former football clubs over the amount of compensation owed to the players for their services in 1990 prior to the start of the football season (1990 preseason).
On or about May 30, 1989, Shuler signed a one-year standard players contract with the N. Y. Jets pursuant to which he agreed to play for the Jets for the 1990 NFL season. On or about April 30, 1990, Morris executed a one-year standard players contract with the N. Y. Giants wherein he agreed to play for said team for the 1990 season. Paragraph 20 of each of said contracts expressly provided: "disputes. Any dispute between Player and Club involving the interpretation or application of any provision of this contract will be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in *274 existence at the time the event giving rise to any such dispute occurs. If no collective bargaining agreement is in existence at such time, the dispute will be submitted within a reasonable time to the League Commissioner for final and binding arbitration by him, except as provided otherwise in Paragraph 13 of this contract.”
On September 4, 1990, after providing the preseason services in accordance with their agreements, each of the players was released by their respective team and their contracts terminated. Thereafter, a dispute arose in connection with the amount due for players’ compensation for the 1990 preseason. The plaintiffs assert that they are entitled to compensation for their preseason services equal to 10% of the contract amount which would have been due for the whole season. Defendants assert that they are only liable for a specific per diem payment, which is only a small fraction of the amount plaintiffs claim.
Plaintiffs commenced this action alleging that the respective clubs have breached the terms of their individual player contracts with respect to compensation (counts II and III of the complaint); they have also made a derivative claim against Paul Tagliabue and the NFL for tortious interference with their (players) contracts. (Count I of the complaint.) Thereafter, defendants brought on the instant motions alleging that the underlying dispute is not one for the courts, but for arbitration.
In support of the motions, defendants allege that the 1982 collective bargaining agreement (CBA) between the National Football League Players Association (NFLPA), which then acted as the players’ union, and the National Football League Management Council (NFLMC), the collective bargaining representative of the NFL contains a broad arbitration clause[1] that embraces the underlying dispute, despite the CBA’s formal expiration in August of 1987. Defendants contend that the players’ representatives, players and clubs have, to date, continued to utilize the grievance and arbitration machinery *275 established by the CBA.[2]
[3]As a result, defendants allege that the CBA governs.
In opposition to defendants’ motion, plaintiff relies on, inter alia, McNeil v National Football League[3] (764 F Supp 1351 [Minn 1991]), wherein, the court found that the NFLPA continued to represent NFL players in collective bargaining only until November 6, 1989, when the NFLPA notified the NFLMC that it (NFLPA) was relinquishing its role as the players’ collective bargaining representative. On December 5, 1989, the NFLPA adopted new bylaws which expressly prohibited it from ever again serving as a collective bargaining representative for NFL players. Upon those facts, the McNeil court held "that the plaintiffs [NFL players] are no longer part of an 'ongoing collective bargaining relationship’ with the defendants” (supra, at 1358). Thus, as of November 6, 1989, there has been no players’ collective bargaining representative relating to the NFL. The CBA, which was negotiated with NFLPA, but which by its own terms expired some time ago, does not have any continuing effect. (See also, Mullin v Los Angeles Rams Football, US Dist Ct, Cal 1991 [case No. CV911932 R6] [wherein the court expressly found that the CBA expired on Aug. 31, 1987, and was not extended or renewed].) The court agrees with the holdings of the McNeil and Mullin courts in those regards.
Hence, plaintiffs’ postexpiration grievances are not subject to arbitration under the 1982 CBA. (See, Litton Fin. Print. Div. v National Labor Relations Bd., 501 US —, 111 S Ct 2215.)
However, the plaintiffs’ individual contracts expressly provide that "[I]f no collective bargaining agreement is in existence at such time, the dispute will be submitted within a reasonable time to the League Commissioner for final and binding arbitration by him”. Therefore, arbitration is required herein.
In opposition, plaintiffs argue that said arbitration clause of their contract should be stricken as an unenforceable adhesion contract because they had no opportunity to bargain or negoti *276 ate any contract terms other than compensation and length of contractual commitment.
Despite plaintiffs’ contentions, the record clearly establishes that plaintiffs are highly paid, sophisticated professional athletes, who possessed considerable bargaining power over the terms of their contracts. They were represented by experienced agents and/or counsel during the negotiation and execution of their player contracts. Significantly, there is absolutely no evidence presented that the plaintiffs ever sought to delete or bargain over the arbitration clause. The arbitration clause is clearly prominently set forth, and is not a trap for the unwary. Nor is there any direct claim made by either plaintiff, by affidavit or otherwise, that they felt that their contracts were presented "on a take-it-or-leave-it basis.” Further, the arbitration clause is not by itself "unreasonably favorable” to the defendants. Consequently, the court finds that the contracts at issue are not adhesion contracts (Sablosky v Gordon Co., 73 NY2d 133, 139; Gillman v Chase Manhattan Bank, 73 NY2d 1; Paribas Props. v Benson, 146 AD2d 522, 525 [1st Dept 1989]; Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449 [DC Cir 1965]). Therefore, plaintiffs are bound by their agreements to resolve any disputes relating to their contracts, by arbitration.
A very serious issue is raised as to who the arbitrator should be. The contracts expressly provide that the disputes be submitted to the Commissioner of the NFL. Plaintiffs allege (in support of their cross motion) that Tagliabue, the Commissioner of the NFL, has an inherent interest in the outcome of the dispute, and is therefore biased and, consequently, should be replaced by a neutral and impartial arbitrator in advance of arbitration proceedings. As shall be discussed below, under both Federal and State law, it is this court’s view that a neutral arbitrator should be substituted for the Commissioner in order to insure a fair and impartial hearing.
Regarding the Commissioner of the NFL, the Constitution of the NFL provides, in article VIII, § 8.1, that the NFL (an unincorporated association of 28 individual teams) shall select and employ the Commissioner and shall determine his period of employment and his compensation. Article VIII, § 8.4 (b) provides that the Commissioner is the chief executive officer of the NFL. Article II, § 2.1 provides that the purposes and objectives for which the NFL is organized are to promote and foster the primary businesses of NFL members, each member being an owner of a professional football club. Moreover, prior *277 to becoming Commissioner, Tagliabue was the chief outside counsel for the NFL and its members (as well as legal advisor to the NFLMC). In that capacity, he frequently represented NFL owners in disputes with players and advocated the positions of the owners. In particular relevance to this case, in Powell v National Football League (888 F2d 559 [8th Cir 1989]), Tagliabue advocated on behalf of the NFL owners the proposition that the terms of the CBA[4] had continuing legal effect after its expiration (the very issue he would have to decide here). Indeed, even when Tagliabue became Commissioner of the NFL, he advocated this position during meetings with the office of the Solictor General of the United States in connection with a certiorari petition filed with the Supreme Court of the United States by plaintiffs in Powell. In addition, the complaint names Tagliabue as a defendant in connection with a claim of tortious interference of contract in issuing an edict "that no members of the NFL may pay their players the contractually provided 10% of the players negotiated salary for pre-season services, but instead must pay the fixed per diem wage contained in the expired 1982 CBA”.
In opposition to plaintiffs’ cross motion, defendants allege, inter alla, that the Commissioner would not be arbitrating plaintiffs’ suit against the NFL, but only the breach of contract claims alleged against the two teams. As a result, defendants contend, resolution of the underlying claims against the N. Y. Jets and the N. Y. Giants would have no direct financial impact on the NFL.
The court finds that Tagliabue’s position as Commissioner, together with his past advocacy of a position in opposition to plaintiffs’ position herein, deprive him of the necessary neutrality to arbitrate these claims. To find for plaintiffs herein, the Commissioner would have to reverse certain positions he previously strongly advocated, and declare nonbinding or void a certain directive he, through his office, issued to NFL clubs. Further, the determination of plaintiffs’ claims may have a major financial impact on various NFL teams which pay their players on a per diem basis for preseason services.[5] All of these factors dictate that the Commissioner cannot be a neutral arbitrator herein.
*278 Based upon the record now before it, the court finds that plaintiffs have shown evidence of lack of neutrality and "evident partiality” and bias on the part of the Commissioner with respect to this specific matter. (See, Matter of Cross & Brown Co. v Nelson, 4 AD2d 501 [1st Dept 1957]; Florasynth, Inc. v Pickholz, 750 F2d 171 [2d Cir 1984]; Erving v Virginia Squires Basketball Club, 468 F2d 1064 [2d Cir 1972].)
Further, this court’s authority to select a neutral arbitrator is "inherent when the potential bias of a designated arbitrator would make arbitration proceedings simply a prelude to later judicial proceedings challenging the arbitration award” (Masthead Mac Drilling Corp. v Fleck, 549 F Supp 854, 856 [SD NY 1982]). Therefore, this court finds that the Commissioner should not serve as arbitrator herein.
Defendants argue that the underlying dispute should be submitted to the CBA labor arbitrators if the Commissioner is disqualified, who are experienced in sports-related disputes. However, the CBA labor arbitrators are potentially biased inasmuch as the viability of these labor arbitrators’ employment is dependent on whether the 1982 CBA is found to be in existence, the very position asserted by defendants. Further, the court has found herein that the 1982 CBA is no longer in existence, and is not binding. Thus, an arbitrator will be appointed by the court. (CPLR 7504.)
Accordingly, defendants’ motion staying this action and compelling arbitration is granted. Plaintiffs’ cross motion for appointment of a neutral and impartial arbitrator is granted.

. Said clause provides, in pertinent part, "[a]ny dispute * * * involving the interpretation or application of, or compliance with, any provision of [the CBA], the Standard Player Contract, the NFL Player Contract, and any provision of the NFL Constitution and By laws pertaining to the terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the [arbitration] procedure set forth in [the CBA]” (art VII, §D.

. The CBA further provides that arbitration of any noninjury grievance is commenced by submitting the dispute to Sam Kagel, who is designated in the CBA as the "Notice Arbitrator”. (See, art VII, §8.) CBA also requires Mr. Kagel, upon receiving notice of a claim, to designate himself or a member of an approved panel of arbitrators to arbitrate the players’ grievance.

. The Jets and Giants were also named defendants in this action.

. Under which the amounts paid to Shuler and Morris for the 1990 preseason were calculated.

. For instance, Shuler alleges that he received a total of $2,713.25 for preseason services instead of his alleged contractual sum of $75,000.