Hubbard ALEXANDER,
et al., Appellants,

v.

MINNESOTA VIKINGS FOOTBALL
CLUB LLC, Respondent,

National Football League,
et al., Respondents.

No. C0–02–136.

Court of Appeals of Minnesota.

Aug. 6, 2002.

Edward M. Glennon, Christopher H. Yetka, Christopher Lynch, Lindquist & Vennum, PLLP, Minneapolis, for appellants.

Michael F. Kelly, Jr., Eden Prairie, for respondent Minnesota Vikings Football Club, LLC.

Daniel J. Connolly, Faegre & Benson, LLP, Minneapolis, and Michael X. Imbroscio (pro hac vice), Covington & Burling, NW, Washington, DC, for respondents National Football League, et al.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by RANDALL, Presiding Judge, WILLIS, Judge, and FORSBERG, Judge.*

## OPINION

WILLIS, Judge.

Appellants challenge the district court's dismissal of their complaint for failure to state a claim on which relief can be granted, arguing that circumstances exist to support the pre-award removal for bias of the designated arbitrator of their dispute with respondents. Because we conclude that the Federal Arbitration Act does not provide for the pre-award removal of an arbitrator, we affirm.

## FACTS

Appellants Hubbard Alexander, Serafino Fazio, Tom Olivadotti, David Atkins, Ray Sherman, Frederick VonAppen, and John Fontes are former assistant coaches of respondent Minnesota Vikings Football Club, LLC (Vikings). Each entered into an employment contract with the Vikings that provided for annual base compensation and for annual incentive compensation, which depended on team performance each year. The employment contracts included an arbitration clause that required the parties to refer any disputes between them to the commissioner of respondent National Football League (NFL), respondent Paul Tagliabue, for binding arbitration.

In January and February 2000, the employment of Alexander, Fazio, Olivadotti, Atkins, and Sherman with the Vikings terminated. In March 2000, the Vikings paid incentive compensation to the then-employed assistant coaches who had been with the team during 1998–99 season; it

Minn. Const. art. VI, § 10.

paid no incentive compensation to Alexander, Fazio, Olivadotti, Atkins, and Sherman for that season. VonAppen's and Fontes's employment with the Vikings terminated in January 2001. In February 2001, the Vikings paid incentive compensation to the then-employed assistant coaches who had been with the team during the 1999–2000 season. The Vikings paid no incentive compensation to appellants for the 1999–2000 season.

Appellants claim that, under the terms of their contracts, they are entitled to incentive compensation for the seasons in which the Vikings employed them as assistant coaches. As their contracts provided, they referred their disputes to Tagliabue for binding arbitration. But in June 2001, before their claims were arbitrated, appellants brought a declaratory-judgment action against Tagliabue, the NFL, and the Vikings to remove Tagliabue as arbitrator of their disputes and to replace him with a neutral arbitrator. They based that action on the grounds that (1) Tagliabue is biased because he is obligated to act in the best interests of NFL teams and their owners and because he previously represented the NFL and its members as chief outside counsel and (2) the employment agreements that they entered into were not voluntary agreements because Tagliabue would not approve the employment contracts without the arbitration clause.

Tagliabue and the NFL moved to dismiss the complaint under Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted on the grounds that the Federal Arbitration Act prohibits challenges based on alleged arbitrator bias before the issuance of an arbitration award and that the parties had entered into a valid, enforceable agreement to arbitrate their disputes. The district court granted respondents' motion to dismiss, and this appeal follows.

## ISSUE

Does appellants' complaint set forth a legally sufficient claim for relief?

## ANALYSIS

▮ When reviewing the dismissal of a complaint under Minn. R. Civ. P. 12.02(e), this court takes the facts alleged in the complaint as true. *Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n,.* 627 N.W.2d 106, 109 (Minn.App.2001), *review denied* (Minn. Aug. 15, 2001). Whether the alleged facts can be proved is immaterial. *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739 (Minn.2000). A reviewing court will not uphold a rule 12.02(e) dismissal if it is possible to grant the requested relief on any evidence that might be produced consistent with the complainants' theory. *Id.* at 739–40.

▮ The Federal Arbitration Act (FAA) governs the enforcement of arbitration provisions in all contracts involving interstate commerce. *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (stating that FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). The parties do not challenge the district court's determination that the FAA applies here. *See Radovich v. Nat'l Football League,* 352 U.S. 445, 445, 77 S.Ct. 390, 390, 1 L.Ed.2d 456 (1957) (stating that interstate nature of business of football places it within provisions of federal antitrust laws).

▮ The FAA provides that a written provision in a contract to settle by arbitration a controversy that arises out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000).

The FAA also provides that a court may vacate an arbitration award for "evident partiality * * * in the arbitrators." 9 U.S.C. § 10(a)(2) (2000). But the FAA does not expressly provide for the pre-award removal of an arbitrator.

Appellants argue that caselaw establishes that the bias of an arbitrator "can so subvert the integrity of the arbitration process" that, under 9 U.S.C. § 2, such an arbitration agreement is unenforceable. They cite *Morris v. New York Football Giants, Inc.* for the proposition that because Tagliabue is biased, a neutral arbitrator must be appointed. *Morris v. New York Football Giants, Inc.*, 150 Misc.2d 271, 575 N.Y.S.2d 1013 (N.Y.Sup.Ct.1991).

In *Morris*, before the issuance of an arbitration award, a New York County trial court judge disqualified Tagliabue for bias as the arbitrator of salary disputes between football players and two New York football clubs. *Id.* at 1017. Finding that Tagliabue's position as commissioner and the fact that he had previously represented NFL owners in disputes against players deprived him of the necessary neutrality to arbitrate the players' claims, the court used its "inherent" authority to replace him with a neutral arbitrator. *Id.* at 1016–17. But *Morris* is not precedential legal authority here, and we do not find it to be persuasive.

In *Aviall, Inc. v. Ryder Sys., Inc.,* the Second Circuit Court of Appeals held that because the FAA does not provide for the pre-award removal of an arbitrator, an agreement to arbitrate before a particular arbitrator must be upheld "unless the agreement is subject to attack under general contract principles as 'exist at law or in equity,'" that is, unless "the arbitrator's relationship to one party was undisclosed, or unanticipated and unintended, thereby invalidating the contract." *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895–96 (2nd Cir.1997) (quoting 9 U.S.C. § 2). In that case, the court reasoned that, absent such circumstances, a party can "hardly object" to the enforcement of a valid arbitration agreement according to its terms. *Id.* at 896.

We find the reasoning of the *Aviall* court to be persuasive. Here, appellants concede that, when they entered into their employment contracts, they knew Tagliabue was the designated arbitrator of any disputes under the contacts and that they knew about Tagliabue's relationship to the Vikings. In fact, the contracts were subject to Tagliabue's approval.

■ Appellants argue that they have asserted facts in their complaint that show that the arbitration clauses in their employment contracts are contracts of adhesion. Although the FAA governs the enforcement of arbitration provisions in all contracts involving interstate commerce, a state may regulate contracts, including arbitration clauses, under general contract principles and may invalidate an arbitration clause on grounds such as fraud, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1655–56, 134 L.Ed.2d 902 (1996).

■ Under Minnesota law, when determining whether an arbitration agreement constitutes an invalid contract of adhesion, courts examine "the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party." *Ottman v. Fadden,* 575 N.W.2d 593, 597 (Minn.App.1998) (citation omitted). Under *Ottman,* an arbitration agreement that is a contract of adhesion is invalid. *Id.*

■ But appellants did not ask the district court to invalidate the arbitration clauses; they asked the district court to

reform those clauses, that is, to remove Tagliabue as the arbitrator and to appoint another arbitrator. Even if the arbitration clauses are contracts of adhesion, appellants cite no legal authority supporting their proposition that the district court may reform the clauses to replace Tagliabue. *See* Minn. R. Civ.App. P. 128.02, subd. 1(d) (providing that briefs must include citations to legal authorities). Appellants' contract-of-adhesion theory, therefore, does not provide a basis for the relief that they request.

### DECISION

Because the Federal Arbitration Act does not provide for pre-award challenges to an arbitrator for bias, the district court did not err by granting respondents' motion to dismiss on the ground that appellants failed to state a claim on which relief can be granted.

**Affirmed.**