*816 Laura Demur Stith, Judge,
concurring in part and dissenting in part
I concur in the per curiam’s holding in Section II that a writ of mandamus is the appropriate mechanism to review whether the trial court erred in sustaining the motion to compel arbitration, and with its holding in Section III that the arbitration agreement is valid. I dissent from the per curiam’s holding in Section V.A. that the National Football League (NFL) commissioner is presumptively biased and in Section IV.A. that the NFL Dispute Resolution Guidelines have not been agreed to by the parties. But I concur in the per cu-riam’s holding in Section IV.B. and V.B. that where, as here, a majority holds that the arbitrator is disqualified and that the parties have not agreed on the terms governing arbitration, the Missouri Uniform Arbitration Act (MUAA), §§ ⅛35.35'0 to US5.U7D, RSMo 2000, provides mechanisms for appointing a substitute arbitrator and for providing substitute terms governing arbitration. Accordingly, I concur in the per curiam’s holding in Section VII.B.

I. A WRIT OF MANDAMUS IS THE APPROPRIATE PROCEDURE

Addressing first the issue of whether the writ petition is properly considered by this Court now, I reject Judge Fischer’s argument in his dissenting opinion that a writ of mandamus should not be used to consider the propriety of granting a motion to compel arbitration. In Lawrence v. Beverly Manor, 273 S.W.3d 525, 529 (Mo. banc 2009), this Court expressly held that a party cannot be forced to arbitrate a dispute in the absence of a valid agreement to do so. This Court also recently has reaffirmed that it is the trial court, not the arbitrator, that determines whether the parties have signed a valid agreement to arbitrate. Brewer v. Missouri Title Loans, 364 S.W.3d 486, 492 (Mo. banc 2012). These cases make clear the inadequacy of the dissent’s proposition that a case should be sent to arbitration first, and only after the fact should the courts review whether the agreement to arbitrate was valid. That is the proverbial putting of the cart before the horse. If there was no agreement to arbitrate, then requiring a party to go through arbitration before trying the case would deny that party his or her recognized right to try the case before the courts.[1]

II. NFL COMMISSIONER SHOULD NOT BE FOUND PRESUMPTIVELY BIASED AND NFL DISPUTE RESOLUTION GUIDELINES ARE PROPER

I disagree with the per curiam’s holdings in Sections IV.A. and Y.A. that the NFL guidelines have not been agreed to by the parties as governing the arbitration here and that the NFL commissioner should be disqualified as an arbitrator. Accordingly, I believe that the better course would be to direct the trial judge simply to refer this matter for arbitration under the contract as written. But I agree with the per curiam’s holding in Sections IV.B. and V.B. that if the chosen arbitrator is disqualified, or if the terms governing the arbitration are not set out in the agreement to arbitrate, then the missing terms can be supplied by the MUAA *817 and, pursuant to the MUAA, another arbitrator may be appointed. See §§ 435.350 to 435.470; State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 861 (Mo. banc 2006). Therefore, because a majority of the Court determines that the arbitrator should be disqualified and that the NFL guidelines do not govern the arbitration, I concur in the per curiam’s holding in Section VILB. that a writ should issue on the terms set out in the majority opinion.

A. The NFL Commissioner Should not be Disqualifíed in Advance of Arbitration

The per curiam holds in Section V.A. that the NFL commissioner is an employee of the various NFL teams and that, as a result, he inherently is not neutral and cannot serve as an unbiased arbitrator in a dispute between an employee and an NFL team. The per curiam is the first and only decision in the entire country to so hold based simply on the fact that the NFL commissioner is, well, the NFL commissioner.
The Federal Arbitration Act (FAA) does not contain a provision authorizing advance disqualification of an arbitrator for inherent bias. The FAA instead provides for judicial vacation of an arbitration award “where there was evident partiality or corruption in the arbitrators.” 9 U.S.C. § 10(a)(2). The MUAA similarly provides that “the court shall vacate an award where: ... There was evident partiality by an arbitrator appointed as a neutral....” § 435.405.1(2). These provisions by their nature require that the arbitration occur first, and review for evident bias or partiality occur later in court. They entitle Mr. Hewitt to seek judicial review of any arbitration award if he believes the commissioner or his designee shows evident bias or partiality in considering his employment discrimination claim.
This review is adequate to protect the parties to an arbitration in all but cases in which actual bias or an actual conflict of interest is shown before the fact. For the same reasons that I would not wait until after arbitration to determine whether the parties have agreed to arbitration, ! agree with the per curiam that it would be pointless to wait until after arbitration to disqualify an arbitrator who was shown to be actually biased or to have an actual conflict of interest. Actual bias or' an actual conflict inevitably would résult in voiding of the result of the arbitration, and delaying that determination would be pointless.
Here, however, Mr. .Hewitt concedes that he has not alleged or shown actual bias, and no evidence of actual bias was presented. Instead, he asks that this Court simply assume that no NFL commissioner could be unbiased and to disqualify the NFL commissioner under the common law bar on unconscionability.[2] The per curiam accepts Mr. Hewitt’s invitation to so hold. I believe, this is error.
A comparison of the facts of this case to those in the case relied on by the per curiam, Vincent, provides a good example of why disqualification in advance is not required here. In Vincent, the president *818 of a home building company who also was president of the local home builders’ association was designated as the sole selector of the arbitrator in any dispute between a home builder and a home purchaser. This Court found an actual conflict of interest and, therefore, inherent bias on those facts because, as the president of the home builders’ association, he was “an individual in a position of bias.” Id. at 859. The per curiam says that the NFL commissioner similarly is an individual in a position of bias because he is an “employee” of the NFL teams. That analogy is too simplistic.
The person who selected the arbitrator in Vincent was the president of a home builders’ association. The person selected as arbitrator under the arbitration clause at issue here is not the president of the Rams, however, or of any other NFL team. He is the NFL commissioner. Not only is the NFL commissioner not the owner of the Rams or another NFL team, the NFL commissioner does not exclusively represent the interests of the team owners. He is hired and employed by the NFL, not by the owners individually or collectively. Unlike the president of an association made up of and representing only home builders, here the NFL commissioner is required by the NFL rules to be “a person of unquestioned integrity,” and section 8.2 of the NFL constitution requires that the commissioner “shall have no financial interest, direct or indirect, in any professional sport.” Further, the NFL commissioner is required to 'serve as arbitrator between NFL teams as well as between employees and between NFL owners and their players or other employees. This specifically includes disputes in which the NFL commissioner is required to take a position adverse to one or more owners, such as in disputes among two or more owners of the same team or among the owners of different teams. NFL Const. § 8.8. Neither the owner of the Rams nor the owner of any other team can have the NFL commissioner fired for not coming to the decision the owner wished. Two-thirds of the members of the NFL must Vote to fire the commissioner and select a successor. NFL Const. § 8.1.
The NFL commissioner’s position, therefore, is far more removed from the Rams and their ownership than was the home builders’ association president who was to select the arbitrator in Vincent. Moreover, unlike in Vincent, this Court has before it examples of prior cases in which the NFL commissioner has been selected as arbitrator, and in none has he been found to be inherently biased. In fact, in each case in which his disqualification has been sought solely on the basis of his position as NFL commissioner, that request for disqualification has been denied — until now.[3] Actual bias or a conflict *819 of interest always has been required.[4]
Mr. Hewitt concedes in his brief and at argument that the NFL commissioner might be able' to be fair as to players or others with superior bargaining power personally or by dint of their union membership. But, Mr. Hewitt says, because he does not have the benefit of such resources, bias should be presumed for him and other non-player, non-union employees.
There are at least two problems with this argument. First, the existence or absence of inherent bias is a separate question from that of an employee’s bargaining power; while bargaining power may help keep existing bias in check, the arbitrator is either inherently biased or, he is not. No case cited supports the adoption of the two-tiered bias analysis Mr. Hewitt proposes.
Second, even were the Court to agree that a two-tiered approach might be proper when a plaintiff showed that arbitrators of the type designated had shown bias in the past as to the group of employees of which the plaintiff was a part, it would be a factual question, and there was no such showing here. Mr. Hewitt has offered only speculation. Mr. Hewitt cites no evidence of the current NFL commissioner’s bias against employees and cites no legal authority for his claim that this or any other sports commissioner is inherently biased or has exhibited bias based solely on the commissioner’s position as commissioner. I reject a presumption of bias.
I find much more persuasive the cases from other jurisdictions that have specifically rejected similar pre-award claims of potential bias on the part of an NFL commissioner. In Alexander v. Minnesota Vikings Football Club LLC, 649 N.W.2d 464, 467 (Minn.Ct.App.2002), the Minnesota court of appeals declined to find the commissioner to be a biased arbitrator prior to the issuance of an arbitration award, observing at the outset that “the FAA does not expressly provide for the pre-award removal of an arbitrator.” Alexander adopted the Second Circuit’s reasoning in Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895, 896 (2d Cir.1997), which, in interpreting the FAA, stated that “an agreement to arbitrate before a particular arbitrator may not be disturbed, unless the agreement is subject to attack under general contract principles,” such as when “the arbitrator’s relationship to one party was undisclosed, or unanticipated and unintended, thereby invalidating the contract.”
When a party agreeing to arbitration is fully aware at the time of contract formation of the identity of the arbitrator and his relationship with the other party (as Mr. Hewitt was fully aware through the current contract and from many earlier contracts that the NFL commissioner would serve as arbitrator of any dispute arising between him and the Rams), Aviall *820 determined he can “hardly object” to the enforcement of the arbitration agreement “according to its terms.” Id. at 896; see also Hojnowski v. Buffalo Bills, Inc., 995 F.Supp.2d 232, 239 (W.D.N.Y.2014) (also relying on Aviall to compel arbitration over objections that the NFL commissioner’s inherent bias rendered the arbitration agreement unconscionable).
As noted above, to enforce the arbitration agreement as written would not leave Mr. Hewitt without a remedy. Mr. Hewitt has an adequate mechanism for judicial review of the result of the arbitration and may be afforded relief under the FAA and MUAA should the arbitrator show evident bias. See 9 U.S.C. § 10(a)(2); § 435.405.1(2).

B. NFL Dispute Resolution Guidelines

I also disagree with the per curiam’s holding in Section IY.A. that the arbitration agreement fails to incorporate or adequately identify the essential terms of arbitration. The arbitration provision in Mr. Hewitt’s employment contract states:
Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unap-pealable ....
(Emphasis added.) The per curiam contends that, because this provision does not directly mention the NFL Dispute Resolution Procedural Guidelines or incorporate them by reference or attach them, Mr. Hewitt did not have sufficient information to make him aware of the full provisions of his employment contract.
The per curiam cites not a single case holding that an agreement to arbitrate must include or attach a copy of the arbitration rules to be a valid and complete agreement to arbitrate. Indeed, it would be the rare employment contract or business contract that attached arbitration rules to the agreement itself. This is not to say that an agreement need not set out any information as to what rules will govern arbitration, but only that those rules need not be set out in the contract itself. Reference to the appropriate rules is adequate.
In Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc., 37 S.W.3d 843 (Mo.App.2001), and Jim Carlson Construction, Inc. v. Bailey, 769 S.W.2d 480 (Mo.App.1989), the agreements did not themselves contain the arbitration procedures but instead referred to another contract or standard source where they could be ascertained or to another contract that incorporated by reference’the arbitration procedures. This incorporating by reference a document that in turn incorporated the terms by reference was held to be adequate. Metro Demolition, 37 S.W.3d at 847; Jim Carlson Constr., 769 S.W.2d at 481. That is what occurred here; the contract incorporated the NFL Constitution and Bylaws, pursuant to which the guidelines were adopted.
It was on a similar basis that the United States District Court for the Western District of New York rejected a similar argument in Hojnowski. 995 F.Supp.2d at 236-38. In that case, another former equipment manager for another NFL team challenged the arbitration provision of his employment contract when he sued for age discrimination. Hojnowski’s employment contract included a similarly worded arbitration agreement, and he was not provided with a copy of the guidelines. Id. at 235. Like Mr. Hewitt, Hojnowski claimed that this rendered the arbitration agreement invalid for lack of mutual assent to essential terms. Id. at 236-37.
*821 Hojnowski rejected the argument that the validity of an' arbitration agreement requires that the parties be provided with copies of the arbitration rules or that the particular set of rules must be expressly identified in the agreement, noting no case had been cited requiring that the parties be given a copy of the relevant rules when they were otherwise accessible.[5] Id. at 237. Rather, the federal court found:
[Bjecause Hojnowski was fully aware any dispute would be arbitrated before the NFL Commissioner, and because that tribunal clearly had an established set of rules governing arbitration procedure, those rules (which Hojnowski does not argue were inaccessible) were sufficiently incorporated into the agreement and knowledge thereof can be imputed to Hojnowski.
Id. at 237-38. See also Canterbury v. Parsons Constructors, Inc., No. 08-0104-CV-W-HFS, 2009 WL 899661, at *2 (W.D.Mo. Mar. 27, 2009) (unreported) (“[T]he omission of further details about the [arbitration] program is not fatal. The briefing offers no case law establishing such a defense to arbitration”).
This reasoning is directly applicable here. The arbitration rules are contained in a document titled Dispute Resolution Guidelines prepared pursuant to the authority granted the commissioner by the NFL Constitution and Bylaws and used in all NFL arbitrations. The per curiam seems to hold that, because the guidelines themselves were not specifically referenced, Mr. Hewitt was unable to determine what rules governed and in fact no rules applied. But this just is not the case. The contract says that the parties will be bound, by the NFL Constitution and Bylaws, the guidelines were adopted pursuant to the NFL commissioner’s authority under the constitution and bylaws, and no prior case has expressed any confusion as to what these guidelines are.
Mr. Hewitt has not done so either. Mr. Hewitt does not claim that he thought a different set of rules were being referred to or which would govern. This is not a case in which a signatory to an agreement asked to see what rules governed or was misled into believing that the arbitration would be governed by some rules other than the guidelines. This case is about Mr. Hewitt and whether he was unable to determine what rules governed the arbitration, not about how arbitration agreements could best be drafted. It made no difference to his conduct that the contract specifically mentioned the NFL “Constitution and By-laws and Rules and Regulations” without specifically referring to the guidelines themselves. Mr. Hewitt never inquired about what arbitration rules governed or indicated he did not know where they could be found. Mr. Hewitt agreed to arbitration under the NFL rules, and the only place that the NFL sets out the rules governing arbitration are in the guidelines adopted under the rules.
The only reason Mr. Hewitt may not have known what the guidelines said or where they were, despite having signed a similar contract with similar terms for up to 40 years, is due not to an indefiniteness of the contract but to his own unique lack of curiosity. To quote from the trial judge’s opinion below:
Mr. Hewitt, by his own admission, signed either this employment contract, or contracts substantially similar to it, for forty years. This contract clearly *822 references the “Constitution and Bylaws and Rules and Regulations of the National Football League.” If Mr. Hewitt did not read his contract, inquire about its terms or ask for supporting documents during those decades, the [c]ourt is not able to turn back the hands of time and shield him from his own contractual promises.
The trial court thereby held that, as a matter of fact, Mr. Hewitt had sufficient opportunity to determine the rules but chose not to do so. Consequently, he is bound by them. The trial- court’s ruling is consistent with that in Ludwig v. Equitable Life Assurance Soc’y of U.S., 978 F.Supp. 1379, 1382 (D.Kan.1997), which rejected a former employee’s very similar claim that an arbitration agreement was not enforceable because she did not receive a copy of the governing code when she signed the agreement. Ludwig noted that the employee did not claim she was denied a copy of the code, the arbitration agreement made clear all disputes were subject to arbitration, and the court could solve any ambiguities by construing the arbitration provision liberally to effectuate its purpose. Therefore, the rules were sufficiently definite for the arbitration to proceed. Id.
Similarly, here, the rules are sufficiently specific and ascertainable to govern the arbitration. In fact, because the trial court referred this matter to • arbitration, the parties have been preparing for the arbitration through discovery and otherwise under the very guidelines that the per curiam says are too unknowable to govern. The per curiam’s hypothetical and speculative concern about a potential for confusion, therefore, should have no application here, and does not make this arbitration contract unconscionable or require substitution of arbitration rules under the MUAA.
For all of these reasons, I would affirm the trial court’s referral of this matter to arbitration. But, because a majority holds that the arbitrator is disqualified and that the NFL guidelines do not provide the terms governing the arbitration — points with which I disagree for the reasons noted above — I agree with the per curiam’s holding in Section VII.B. Accordingly, I agree to the issuance of a permanent writ as set out by the majority opinion.

. Arguably it also would violate the open courts provision of article I, section 14 of Missouri's constitution. A valid arbitration clause does not violate that guarantee because it is contractually agreed to and because suit may be filed prior to the arbitration. See State ex rel. Cardinal Glennon Mem’l Hosp. for Children v. Gaertner, 583 S.W.2d 107, 110 (Mo. banc 1979). But, when there is no agreement to arbitrate, compelling the plaintiff first to go through arbitration could well be considered to be an arbitrary precondition to trying his or her case in the courts, in violation of the open courts provision.

. While the ultimate issue simply is whether a contract or a term of the contract is unconscionable, in making this determination Missouri courts examine both the procedural aspects of contract formation and the substantive provisions of the contract. “Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself.” Vincent, 194 S.W.3d at 858 (noting further that "[pjroce-dural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process” while "[sjubstantive unconsciona-bility means an undue harshness in the contract terms”).

. The persuasiveness of Mr. Hewitt's citation to Dryer v. Los Angeles Rams Football Co., Inc., 151 Cal.App.3d 266, 198 Cal.Rptr. 497 (1984), is limited by the fact that it was vacated by the California Supreme Court in Dryer v. Los Angeles Rams, 40 Cal.3d 406, 220 Cal.Rptr. 807, 709 P.2d 826 (1985), and is of no precedential value. Mr. Hewitt attempts to resuscitate the court of appeals' decision by suggesting that the case was vacated on other grounds (i.e., if the commissioner actually had been designated to arbitrate Dryer’s dispute, rather than being named only as the potential arbitrator in a narrow set of circumstances that did not arise in Dryer’s case, the high court would have found the agreement unconscionable), but the California Supreme Court’s opinion does not so state. Rather, it vacated the lower court’s decision, in part, because it "invalidated an entire arbitration procedure because of a purely speculative possibility that the commissioner might have the power, at some point, to withdraw the dispute from the normal arbitration process,” and it declined to take a position on the validity of the arbitration agreement had a different set of facts been before it. 220 Cal.Rptr. 807, *819 709 P.2d at 833 (emphasis added). The fact that the California court was unwilling to set aside an arbitration agreement when the attack on the agreement was based on speculation rather than evidence does more to undermine Mr. Hewitt’s argument than to support it.

. Morris v. New York Football Giants, Inc., 150 Misc.2d 271, 575 N.Y.S.2d 1013, 1016-17 (N.Y.Sup.Ct.1991), held that the then-commissioner was deprived of "the necessary neutrality to arbitrate these claims” because he had previously served as chief outside counsel for the NFL and its members and, in that capacity in a prior case, had advocated a position directly at odds with that advanced by the players in the dispute at issue. Again, the court's decision was based on evidence of actual bias. It bears repeating that Mr. Hewitt has to this point offered no evidence of actual bias here.

. I agree with the Hojnowski court's admonishment that it is "prudent to explicitly refer to, or even include in the contract itself the specific rules that would govern any arbitration proceeding." 995 F.Supp.2d at 238. Under the facts and circumstances- of the present case, however, the reference was legally not inadequate.