Filed 4/15/15  Hanson v. Cable CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RANDY HANSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TOM CABLE et al.,<br><br>        Defendants and Respondents. | A138208<br><br>(Alameda County<br> Super. Ct. No. RG-10-499908) |

Plaintiff and appellant Randy Hanson commenced a lawsuit against his former employer defendant and respondent The Oakland Raiders (the Raiders), a member club of the National Football League (NFL), and its former head coach and managing agent defendant and respondent Tom Cable (hereafter also collectively referred to as respondents), and defendants Does 1 through 10, inclusive.  Hanson sought monetary damages for assault, battery, and intentional infliction of emotional distress, arising from a verbal and physical altercation between Hanson and Cable that occurred at the Raiders' training camp in 2009.  Respondents successfully secured an order compelling the parties to arbitrate the matter pursuant to provisions in Hanson's employment agreement with the Raiders.  Arbitration awards were ultimately issued resolving Hanson's claims against respondents.  The trial court denied Hanson's petition to vacate the arbitration awards and granted the Raiders' petition to confirm the arbitration awards.  Hanson appeals from the judgment dismissing his complaint after confirmation of the arbitration awards.

Hanson mounts two challenges to the order compelling arbitration.  He contends the agreement to arbitrate does not encompass the tort claims alleged in his complaint.

He further contends the agreement to arbitrate is unenforceable because it is both procedurally and substantively unconscionable. We conclude Hanson's contentions do not require reversal. Accordingly, we affirm the judgment.

## FACTS

### A. Background

In early 2007, Hanson began his employment with the Raiders as an assistant secondary coach at a salary of $160,000 for the first year and $170,000 thereafter. Two years later, in January 2009, Hanson was promoted to assistant coach at a salary of $200,000 per year. In both 2007 and 2009, Hanson signed employment agreements, which contained the following arbitration clause: "Hanson agrees that all matters in dispute between Hanson and [the Raiders], including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration, and his decision shall be accepted as final, conclusive, and unappealable." Hanson also agreed to "abide by and be legally bound by the Constitution, Bylaws, and rules and regulations of the NFL . . . and by the decisions of the Commissioner of the NFL . . . which decision[s] shall be final, conclusive and unappealable." In pertinent part, the NFL Constitution, article VIII, section 8.3 provides: "The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate: [¶] . . . [¶] (C) Any dispute between or among players, coaches, and/or other employees of any member club or clubs of the League, other than disputes unrelated to and outside the course and scope of the employment of such disputants within the League." The NFL's "Dispute Resolution Procedural Guidelines" govern "the time, method and manner of the arbitration procedure."

### B. Trial Court Proceedings

On February 23, 2010, Hanson filed this lawsuit against respondents and Does 1 through 10, inclusive, alleging causes of actions for assault, battery, and intentional infliction of emotional distress. Each cause of action arose from an incident that occurred on August 5, 2009. In particular, Hanson alleged that Cable, as "a managing agent of and

2

the head coach" of the Raiders, called a meeting of several coaches at the Raiders' training camp. During the meeting, Cable allegedly attacked Hanson, causing him personal injuries. Regarding the Raiders' liability, Hanson alleged that at the time of the assault, Cable was acting within the scope of his "agency and employment" with the Raiders. Hanson also alleged the Raiders later "ratified" Cable's conduct by failing to conduct more than a cursory investigation of the incident and discipline Cable. Hanson further alleged that as a consequence of the incident, he was placed on leave of absence for an extended period of time, was not allowed to return to his position as assistant coach, and instead, was eventually permitted to return to an undefined role in the Raiders' personnel department under conditions that caused him embarrassment, distress, and humiliation.

In response to Hanson's complaint, respondents filed separate motions to compel arbitration pursuant to the provisions in Hanson's 2009 employment agreement with the Raiders,[1] which motions were opposed by Hanson. After consideration of the parties' papers and oral argument, the trial court (Hon. Yvonne Gonzalez Rogers) issued a written decision resolving the motions to compel arbitration.

The court set forth the issues before it in the following manner: "The parties do not dispute that the arbitration clause in the Agreement encompasses Hanson's assault and battery and emotional distress claims. Hanson argues that because the NFL has already conducted an internal investigation and decided that no violation of its own rules occurred he should not be compelled to arbitrate. He further argues that the entire 'arbitration clause is fatally flawed' and cannot be enforced in any circumstance because the commissioner is an employee of the NFL, and therefore, should never be allowed to preside over a dispute involving an NFL club. [¶] The four-page NFL Dispute Resolution Procedural Guidelines ('NFL Arbitration Guidelines') outline generally the procedures for resolution by arbitration giving the NFL Commissioner broad control.

---

[1]     Cable relied on the contractual provision that Hanson "abide by and be legally bound by the [NFL] Constitution." The Raiders relied on both the contractual provision cited by Cable, and the arbitration clause in Hanson's employment contract.

[Record Citation.] Paragraph 3.1 provides that the 'Commissioner may conduct the arbitration in such manner as he deems appropriate, *and in a manner designed to reach a fair and prompt outcome, consistent with the circumstances of the particular dispute.*" (Emphasis supplied.) Further, paragraph 3.5 of the NFL Arbitration Guidelines provides the parties with the option of proposing 'alternative methods of proceeding or variations from these Guidelines in a particular arbitration, which the Commissioner may permit in his discretion.' Here, the NFL Commissioner has indicated that arbitration under its provisions would be appropriate. [Record Citation.] However, because Hanson filed suit in state court, there has been no determination made by the NFL as to the manner or method of arbitration that will be chosen to reach a fair and prompt outcome, consistent with the circumstances of this dispute, nor did the parties undertake to exercise their option to propose jointly to the Commissioner alternative methods of proceedings. Hanson has not filed a cross-motion for the appointment of a neutral and impartial arbitrator, but rather seeks to have the[ ] entire clause invalidated."

The court rejected Hanson's contention that the arbitration clause in his employment contract was both procedurally and substantively unconscionable. It explained: "When evaluating a contractual arbitration clause, courts must determine whether the clause is both procedurally and substantively unconscionable. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [(*Discover*) [2]].) Both forms must be present although a sliding scale exists. (*Armendariz v. Foundation Health Pyschcare, Inc.* (2000) 24 Cal.4th 83, 114 [(*Armendariz*) [3]].) The longstanding goal is for courts to ensure that the contractual mechanism and procedures will allow parties with a 'realistic and fair opportunity to prevail in a dispute under its terms.' (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825 [*Scissor-Tail*].) It is for courts to determine 'largely on a case by case basis' whether 'minimum levels of integrity' exist. (*Id.*)"

---

[2]  *Discover* was abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ____, ____ [131 S. Ct. 1740, 1746-1749] (*Concepcion*).

[3]  *Armendariz* was abrogated in part on another ground in *Concepcion, supra*, 131 S. Ct. at p. 1746.)

4

In addressing the element of procedural unconscionability, the court stated: "Procedural unconscionability is found where the provision is the result of 'surprise' or 'oppression'. (*Armendariz, supra,* 24 Cal.4th at [pp.] 113-114.) [']Surprise['] is present in a contract when the supposed agreed terms are hidden in a prolix agreement drafted by the party seeking to benefit from a disputed term. 'Oppression' is found in contracts of adhesion when there is an unequal bargaining power among the parties to the contract resulting in no real negotiation of the terms of the contract and no meaningful choice is available to the weaker party. [¶] The Agreement between Hanson and the Raiders totals five pages, eight and one-half by eleven inches in size, double-spaced, including introductory language and signature blocks. The agreement uses simple, understandable language. Paragraphs one through five focus on Hanson's role, tenure and job duties. Paragraph six identifies his salary. Paragraphs seven through ten concern good cause for termination, game day dress, and Hanson's agreement to conduct himself with 'due regard to public conventions and morals' and to 'abide by and be bound by the Constitution, Bylaws, and rules and regulations of the NFL' as well as the NFL Commissioner's decisions. [¶] The arbitration provision is set forth in paragraph eleven using the same type-face. It reads, in its entirety: [¶] Hanson agrees that all matters in dispute between Hanson and Club, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration, and his decision shall be accepted as final, conclusive, and unappealable. [¶] The remaining two paragraphs provide addresses for notices and an integration clause. Hanson states in his Declaration that it was his 'understanding that [he] needed to sign the contract as it was if [he] wanted to work for the Raiders.' [Citation.] [¶] Generally, provisions forced upon another do support a finding of adhesion. Here, Hanson's declaration is self-serving and more is needed to show that the contract is one of adhesion. Merely being an employee to a company does not in itself necessarily create an adhesion contract. Hanson does not claim surprise and he cannot, because his counsel acknowledged at oral argument that Hanson served as a witness in an NFL Arbitration himself. When Hanson signed the Agreement, he had employment as an assistant coach

for the Los Angeles Rams. [Citation.] The Agreement sets forth Hanson's salary, which is not insignificant. Although not outcome determinative, Hanson cannot be considered a lower level employee who lacks any voice in a larger corporate structure. (See, e.g., *Morris v. New York Football Giants, Inc.* (1991) [150 Misc. 2d 271, 276,] 575 N.Y.S.2d 1013, 1016 [rejecting arguments that the professional football players who were highly paid, sophisticated athletes and represented by experienced agents and/or counsel were presented contracts with arbitration clauses on a[ ] 'take-it-or leave-it' basis].) [¶] There is no evidence that Hanson disagreed with the Agreement's arbitration provision or foundation for Hanson's statement that he was required to agree to arbitration in order to be employed by the Raiders. There is no evidence of pressure, as a representative of the Raiders left the Agreement with Hanson for Hanson to sign at his convenience. [Record Citation.] The Court notes that evidence is lacking on accessibility and/or delivery of the NFL Arbitration Guidelines, Bylaws and Constitution as part of the contracting process. On the current record there is insufficient evidence to support findings of surprise or oppression."

In addressing the element of substantive unconscionability, the court stated: " 'Substantive' unconscionability focuses on the terms of the agreement and the presence of overly harsh or one-sided results. (*Martinez v. Master Protection Corporation* (2004) 118 Cal.App.4th 107, 113.) . . . [¶] Hanson argues that the agreement is substantively unconscionable because it designates the NFL Commission as the arbitrator. First, Hanson argues that because the NFL Commissioner is employed by NFL member teams, he is biased in their favor and cannot under any circumstance arbitrate disputes between teams and their employees. Second, Hanson contends that the Commissioner is bound by the ethical mandates in California Code of Civil Procedure sections 1281.9, 170.1, and ethics standards for neutral arbitrators, and subject to disqualification on the basis of prior knowledge of the disputed facts of this incident and because reasonable doubt exists that the Commissioner could be impartial. [¶] Regarding the first argument, the Court is not convinced that the fact that the NFL Commissioner's salary is paid or determined by NFL member teams means that in all circumstances the Commissioner must be biased in favor

6

of teams. In support of this argument, Hanson cites to dicta in *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 417. One would expect that if such an argument had merit, it would have been resolved in the last 25 years. The only NFL case cited since 1985 was a New York state court opinion in which the Commissioner was disqualified from acting as arbitrator, but not by application of any rule of automatic disqualification based on the Commissioner's employment status or identity. See *Morris v. New York Football Games, Inc.* (1991) 575 N.Y.S.2d 1013, 1016. [¶] Hanson's second argument has some merit, but it is premature. Both state and federal law appear to permit the Court to enforce arbitration and substitute the arbitrator upon a showing of bias. See, e.g., *Erving v. Virginia Squires Basketball Club* (2d Cir. 1972) 468 F.2d 1064; *Morris v. N.Y. Football Games, Inc., supra,* 575 N.Y.S.2d at 1017; [*Scissor-Tail*], *supra,* 28 Cal.3d at [p.] 831. But in this case, the NFL Arbitration Guidelines to which Hanson contractually agreed to be bound provide a mechanism for ensuring fairness in the context of a given arbitration. They explicitly provide the Commissioner with the discretion to conduct an arbitration in any 'manner as he deems appropriate, and in a manner designed to reach a fair and prompt outcome, consistent with the circumstances of the particular dispute.' (Section 3.1.) This includes 'alternative methods of proceedings' which may be 'jointly' proposed by the parties. (Section 3.5.) While the NFL Arbitration Guidelines set forth a simple outline of pre- and post-arbitration proceedings, they do not foreclose an alternate arbitration process where the circumstances warrant. Hanson cannot ignore his contractual obligation to arbitrate or to propose alternative methods of arbitrating the dispute." The court stayed the action and granted the motions to compel arbitration "without prejudice to any party that believes it necessary to file a motion for appointment of an arbitrator/s to resolve the matter consistent with the terms of the Agreement." Hanson did not file a motion for the appointment of an arbitrator as permitted by the court's order.

Evidence was presented at a hearing before an arbitrator. Thereafter, the arbitrator issued partial and supplemental awards resulting in the denial of Hanson's claims asserted against respondents, save for an award in favor of Hanson in the sum of $3,339

for special medical damages.[4] Hanson filed a petition to vacate the arbitration awards and the Raiders filed a competing petition to confirm the awards. After consideration of the parties' papers and oral argument, the trial court (Hon. Frank Roesch) granted the petition to confirm the awards and denied the petition to vacate the awards. A judgment was later entered dismissing the complaint. Hanson now appeals.[5]

---

[4]    The arbitration involved Hanson's "claims of assault, battery and intentional infliction of emotional distress" against Cable, and Hanson's "claims for breach of contract, breach of implied covenant of good faith and fair dealing, and for defamation (false light)" against the Raiders. The arbitrator's award of special medical damages was based on Cable's offer to pay for Hanson's medical and dental expenses, which the arbitrator interpreted as Cable's stipulation to an award of such damages, subject to proof.

[5]    Hanson's notice of appeal indicates he is only appealing from the January 23, 2013, order denying his petition to vacate the arbitration awards. However, that order, which also granted the Raiders' petition to confirm the arbitration awards, and the earlier December 10, 2010, order compelling arbitration, are not separately appealable. Those orders are reviewable on appeal from the April 17, 2013, judgment confirming the arbitration awards and dismissing the complaint. (See *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 513; *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1060, fn. 1.) Thus, we shall dismiss the purported appeal from the January 23, 2013, order as it is not separately appealable. At Hanson's request, and in the absence of any showing of prejudice, we deem his notice of appeal from the January 23, 2013, order to be a premature notice of appeal from the judgment later entered on April 17, 2013. (Cal. Rules of Court, rule 8.104(2)(d).)

8

In this appeal, as stated above, Hanson challenges the grant of respondents' motions to compel arbitration on two grounds. First, he contends that the tort claims alleged in his complaint fall well beyond the scope of the arbitration clause in his employment contract (hereinafter also referred to as the arbitration clause). Second, he argues that even if his tort claims are arbitrable, the arbitration clause is unenforceable as "permeated by unconscionability." More specifically, he contends the arbitration clause is part of a contract of adhesion that was imposed on a take-it-or leave-it basis, fails to disclose or include the NFL arbitration rules that would govern all arbitrations, lacks mutuality, and fails to provide for a neutral third-party arbitrator. As we now discuss, we conclude that none of Hanson's assertions requires reversal of the order compelling arbitration.

## A.    Arguments Concerning Scope of Disputes Subject to Arbitration

Initially we note that Hanson's argument concerning the scope of disputes subject to arbitration is forfeited because he failed to raise the issue in the trial court when he initially opposed arbitration. (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681 [forfeiture found where plaintiff failed to raise issue of unconscionability based on preclusion of administrative remedies in resisting petition to compel arbitration]; *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1266 [forfeiture found where appellant failed to raise issue of unconscionability claim in

---

[6]    In the trial court, Hanson filed one joint memorandum of points and authorities in opposition to the separate motions to compel arbitration filed by respondents, "since the arguments are overlapping and would be repetitive. Indeed, Cable is a managing agent of the Raiders and the Raider's potential liability for the torts here is heavily intertwined with Cable's, and the grounds for denying the two [motions] are largely the same." On appeal, Cable has filed a one-page brief containing no substantive arguments and essentially asking us to affirm the judgment based on the substantive arguments in the responsive brief submitted by the Raiders. Therefore, for convenience and as appropriate, we shall construe the arguments made by Hanson as addressing both respondents and the substantive arguments by the Raiders as made on behalf of both respondents.

resisting petition to compel arbitration or at the hearing in the trial court]; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 [forfeiture found where appellant failed to raise issue of unconscionability based on a bilateral provision for a second level of review of an arbitration award in resisting petition to compel arbitration]; see also *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 72-73 [Supreme Court concluded a contractual arbitration clause delegating enforcement issues to an arbitrator was presumptively valid in the absence of a challenge in the lower courts].)

In all events, Hanson's argument fails on the merits. In support of their motions to compel arbitration, respondents had the initial burden of proving the existence of an agreement to arbitrate the parties' dispute. (*Pinnacle Museum Tower Assn. v. Pinnacle Marker Development (US), LLC* (2012) 55 Cal.4th 223, 236.) To meet their burden, respondents submitted Hanson's signed 2009 employment contract and the NFL Constitution, Bylaws, and Dispute Resolution Procedural Guidelines, which were referred to in the employment contract. Those documents included provisions that all matters in dispute between Hanson and the Raiders were subject to binding arbitration, and disputes between coaches, other than disputes unrelated to and outside the course and scope of the employment of such disputants within the League, were subject to arbitration. Once the existence of a valid agreement to arbitrate was established, the burden shifted to Hanson, as the party opposing arbitration, to demonstrate that the agreement to arbitrate could not be interpreted to require arbitration of his disputes. (See *Dryer v. Los Angeles Rams, supra,* 40 Cal.3d at p. 414; *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 738 (*Bigler*); *Titolo v. Cano* (2007) 157 Cal.App.4th 310, 316-317.)

" 'A long line of California and federal cases holds that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties.' (*Dryer v. Los Angeles Rams, supra*, 40 Cal.3d [at p.] 418, fn. 12; see *Molecular Analytical Systems v. Ciphergen Biosystems, Inc*. (2010) 186 Cal.App.4th 696, 712 [111 Cal. Rptr.3d 876].) It is the dispute, not the named cause of action, that is the focus of inquiry. Thus, [the fact] that the complaint alleges [assault,

10

intentional infliction of emotional distress, and] battery is in itself immaterial; what must be determined is whether the tort claims 'have their roots in the relationship between the parties which was created by the contract.' " (*Bigler, supra*, 213 Cal.App.4th at p. 739.)

Relying on *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511 (*RN Solution*), decided by our colleagues in Division One, and our Supreme Court's decision in *Victoria v. Superior Court* (1985) 40 Cal.3d 734 (*Victoria*), Hanson argues that, as a matter of law, the parties did not contemplate, or expect, that a physical attack on Hanson by another coach would fall within the scope of the arbitration clause in his employment contract or the arbitration provision of the NFL Constitution. We find Hanson's cited authority distinguishable. Unlike the situations in those cases, we are not here concerned with (a) "an alleged violent physical assault by an employee of one company against an employee of [another] company in the context of an intimate domestic relationship between them . . . arising *outside of the business relationship* between" the companies (*RN Solution, supra*, 165 Cal.App.4th at p. 1523, italics added); or (b) the negligent employment of an orderly accused of sexually assaulting a hospital patient who had agreed to arbitrate any claim for "bodily injury arising from rendition or failure to render services" in the hospital (*Victoria, supra*, 40 Cal.3d at pp. 738, 745).

Instead, the case at bar is analogous to *Bigler, supra,* 213 Cal.App.4th 727. In that case, the Sixth District held that a student's parents' agreement to arbitrate " 'any dispute involving the School,' " included the student's claim of battery against a teacher, whose alleged behavior occurred within the course and scope of his role as a teacher in his classroom on a school day concerning an academic performance the student brought to the teacher's attention. (*Id.* at pp. 732, 741.) Similar to our appellate colleagues in *Bigler*, in this case we, too, conclude that Hanson's tort claims against respondents fall within the employment contract clause allowing for arbitration of "all matters in dispute" between Hanson and the Raiders, and the NFL's Constitution clause allowing for arbitration of all disputes between coaches, other than disputes unrelated to and outside the course and scope of the employment of such disputants within the League. We are not persuaded by Hanson's reliance on the circumstance that the employment contract's

11

"only definition" of a claim subject to arbitration is " 'any dispute *arising from the terms of this Agreement*.' " The phrase cited by Hanson is part of a sentence that reads: "Hanson agrees that all matters in dispute between Hanson and Club, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration, and his decision shall be accepted as final, conclusive, and unappealable." When read in context, the use of the language "including without limitation" connotes the " 'illustrative and not limitative' function of the example[ ] given" of a dispute between Hanson and the Raiders that would be subject to arbitration. (*Campbell v. Acuff-Rose Music, Inc.* (1994) 510 U.S. 569, 577.) Had Hanson and the Raiders intended to limit arbitrable disputes to those arising from the terms of the employment contract, there would be no reason to use the phrase "all matters in dispute . . . including without limitation." Thus, we cannot say, as a matter of law, that Hanson's tort claims against Cable were "unrelated to and outside the course and scope" of their employment in the League, or did not relate sufficiently to the professional relationship of Hanson and the Raiders so as to fall outside the employment contract clause allowing for arbitration of "all matters in dispute" between them.

## B. Arguments Concerning Unconscionability

We also see no merit to Hanson's arguments that the arbitration clause should not be enforced because it is both procedurally and substantively unconscionable. [7] As the trial court noted, to invalidate a contract term, elements of both procedural and substantive unconscionability are required but not in the same degree. (*Stirlen v. Supercuts, Inc*. (1997) 51 Cal.App.4th 1519, 1533.) " 'Essentially a sliding scale is

---

[7]     We note that the issue of the standard to be applied in determining whether a contract or contract term is substantively unconscionable is presently pending before our Supreme Court in *Sanchez v. Valencia Holding Company* (2011) 201 Cal.App.4th 74, review granted March 21, 2012, S199119. We also note the Raiders have asked us to consider *Sabia v. Orange County Metro Realty, Inc*. (2014) 227 Cal.App.4th 11, which opinion has been depublished by review granted by our Supreme Court on September 24, 2014, S220237. The California Rules of Court preclude our consideration of the case and we do not further address it. (Cal. Rules of Court, rule 8.1105(a), (e)(1).)

invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " (*Armendariz, supra*, 24 Cal.4th at p. 114.) Hanson as "[t]he party opposing arbitration has the burden of proving unconscionability." (*Tiri v. Lucky Chances, Inc*. (2014) 226 Cal.App.4th 231, 244 (*Tiri*).)

Hanson contends the arbitration clause is procedurally unconscionable because his employment contract was one of adhesion and he was neither told the NFL Dispute Resolution Procedural Guidelines rules would govern an arbitration nor given a copy of those rules. However, the trial court rejected Hanson's assertions, finding there was insufficient evidence of an adhesion contract, surprise or oppression, and no evidence concerning the accessibility and/or delivery of the NFL Constitution, Bylaws, or Dispute Resolution Procedural Guidelines as part of the contracting process.[8] On appeal, Hanson argues the court's ruling was against "the weight of the evidence supplied by both parties." We decline Hanson's invitation to reweigh the evidence on this point. "[T]he applicable standards of appellate review of [an order or] judgment based on affidavits or declarations are the same as for [an order or] a judgment following oral testimony: We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923, citing to *Griffith Co. v. San Diego College for Women* (1955) 45 Cal.2d 501, 507-508.) Consequently, it was for the trial court as the trier of fact to weigh "all the

---

[8]    In the trial court, Hanson's written opposition made no mention of his lack of access or knowledge of the NFL Constitution, Bylaws, or Dispute Resolution Procedural Guidelines during the contracting process. The only reference to the issue occurred during oral argument. In response to the court's questions, Cable's counsel argued there was nothing in Hanson's opposition papers indicating he was denied access to the NFL Constitution, Bylaws, or Dispute Resolution Procedural Guidelines. Further argument by all counsel confirmed that there was no admissible evidence in the record demonstrating whether or not Hanson had access to or physically received the documents during the contracting process.

13

affidavits, declarations, and other documentary evidence . . . to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) The trial court could properly " ' reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material.' " (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67.) In other words, the trial court was free to reject Hanson's assertions that he met his burden of demonstrating that the arbitration clause was part of an adhesion contract or that he was "unfairly surprised" or oppressed by either the arbitration clause or the requirement to arbitrate all matters in dispute pursuant to the NFL Dispute Resolution Procedural Guidelines. Based on our independent review, the evidence submitted to the trial court does not establish that the arbitration clause was procedurally unconscionable as a matter of law.

Having failed to demonstrate procedural unconscionability, "we need not address whether there was a showing of substantive unconscionability." (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1167.) In all events, we are not persuaded by Hanson's arguments that the arbitration clause is substantively unconscionable because it lacks mutuality and fails to provide for a neutral third-party arbitrator.

To support his argument that the arbitration clause fails to impose a bilateral obligation on the parties to arbitrate their disputes,[9] Hanson references that portion of the arbitration clause which states, "Hanson agrees . . . ." He then argues there is an absence of a reciprocal promise in the arbitration clause requiring the Raiders to submit to binding arbitration. However, we agree with those appellate courts that have rejected Hanson's

---

[9] Hanson did not ask the trial court to consider the issue of lack of mutuality. Nonetheless, the court ruled on the matter, finding that lack of mutuality was not an issue: "The provision is not one-sided. It does not limit arbitration to only certain disputes which would give the Raiders an advantage. It is purely a simple, all-inclusive provision which applies equally to both parties requiring private, rather than public, resolution of disputes."

14

argument that the language used in the arbitration clause lacks mutuality, and thus, is substantively unconscionable. (See *Tiri, supra,* 226 Cal.App.4th at p. 247; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473 [rejecting a holding that "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement"]; cf. *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238 (*Higgins*) [unconscionable unilateral obligation to arbitrate found where arbitration clause included both "I agree" language and allowed defendant to retain right to pursue certain legal remedies]; *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 854 [unconscionable unilateral obligation to arbitrate found where plaintiffs were required to arbitrate any controversy, while defendant was allowed to pursue certain legal remedies].) Hanson complains that any reliance on *Roman, supra,* 172 Cal.App.4th 1462, is misplaced because his employment contract is far from "otherwise mutual." In support of his argument, he asks us to consider that (1) seven of the thirteen paragraphs in the employment contract contain similar "one-sided" language ("Hanson agrees . . ."), and (2) "before the arbitration clause a much longer paragraph obligates only Hanson – not the Raiders – to 'abide by and be legally bound by . . . the decisions of the Commissioner.' " However, we are here concerned only with the enforcement of the arbitration clause. We see nothing in the other provisions of the employment contract that supports a finding that the arbitration clause "is not bilateral." (*Higgins, supra*, 140 Cal.App.4th at p. 1254, fn. 14.) Nor do we see anything that suggests Hanson's other obligations under the employment contract "materially affects the parties' arbitration rights and duties." (*Ibid*.) [10]

---

[10] We recognize that presently pending before our Supreme Court is the following issue: "Is an arbitration clause in an employment application that provides 'I agree to submit to binding arbitration all disputes and claims arising out of the submission of this application' unenforceable as substantively unconscionable for lack of mutuality, or does the language create a mutual agreement to arbitrate all such disputes? (See *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462)." (*Baltazar v. Forever 21*, review granted Mar. 20, 2013, S208345.)

15

We also must reject Hanson's argument that reversal is required based on his argument that the arbitration clause fails to provide for a neutral third-party arbitrator. A trial court has "some discretion as to whether to sever or restrict [an] unconscionable provision or whether to refuse to enforce the entire agreement [to arbitrate]." (*Armendariz, supra*, 24 Cal.4th at p. 122.) Consistent with its discretionary authority, the trial court here determined that Hanson's employment contract "obliged him to participate in the arbitration process set forth in the NFL's Arbitration Guidelines or devised for his case by the Commissioner, but allowed him, if that process resulted in the selection of a biased arbitrator to return to court for the appointment of a neutral and impartial arbitrator." Hanson complains that the trial court essentially rewrote the arbitration clause, which it purportedly cannot do. However, he relies on selective portions of several factually distinguishable state and federal appellate court decisions, which are not binding precedent. (See *Ajamian v. Cantor CO2e, L.P.* (2012) 203 Cal.App.4th 771, 803; *Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177-178 (*Sanchez*);[11] *Cheng-Canindin v. Renaissance Hotel Assocs.* (1996) 50 Cal.App.4th 676, 684, 691*; and Chavarria v. Ralphs Grocery Co.* (9th Cir. 2013) 733 F.3d 916, 925.) And, more pertinently, binding California Supreme Court precedent counsels against reversal of an order compelling arbitration, where, as here, the trial court provides a mechanism that allows for the selection of a neutral third-party arbitrator. Indeed, the trial court's ruling is explicitly supported by our Supreme Court's "holding in *Scissor-Tail, supra*, 28 Cal.3d at page 831. In that case, [the court] found an arbitration agreement to be unconscionable because the agreement provided for an arbitrator likely to be biased in favor of the party imposing the agreement. (*Ibid*.) [The court] nonetheless recognized that '[t]he parties have indeed agreed to arbitrate' and that there is a 'strong public policy of this state in favor of resolving disputes by arbitration. (*Ibid*.) The court found a way out of this dilemma through the [California Arbitration

---

[11] *Sanchez* was abrogated in part on another ground in *Concepion, supra*, 131 S. Ct. at pp. 1746, 1752, as stated in *Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, 366.)

Act], specifically Code of Civil Procedure section 1281.6, which provides in part: 'If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act and his or her successor has not been appointed, the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator.' Citing this provision, the court stated: '. . . [U]pon remand the trial court should afford the parties a reasonable opportunity to agree on a suitable arbitrator and, failing such agreement, the court should on petition of either party appoint the arbitrator.' (*Scissor-Tail, supra*, 28 Cal.3d at p. 831.) Other cases, both before and after *Scissor-Tail*, have also held that the part of an arbitration clause providing for a less-than-neutral arbitration forum is severable from the rest of the clause. (See *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1986) 183 Cal.App.3d 1097, 1107 [228 Cal.Rptr.345]; *Richards v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1976) 64 Cal.App.3d 899, 906 [135 Cal.Rptr. 26].) [¶] Thus, in *Scissor-Tail* and the other cases cited above, the arbitration statute itself gave the court the power to reform an arbitration agreement with respect to the method of selecting arbitrators." (*Armendariz, supra,* 24 Cal.4th at pp. 125-126.)

In sum, we conclude Hanson has failed to demonstrate that the order compelling arbitration requires reversal. Accordingly, we affirm the judgment of dismissal entered after the confirmation of the arbitration awards.

## DISPOSITION

The appeal from the January 23, 2013, order denying the petition to vacate the arbitration awards and granting the petition to confirm the awards is dismissed. The April 17, 2013, judgment of dismissal is affirmed. Respondents are awarded costs on appeal.

17

_____

Jenkins, J.

We concur:


_____

McGuiness, P. J.


_____

Pollak, J.

18