Filed 8/16/21  Sunset Ranches v. Nau Country Ins. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SUNSET RANCHES, INC., Plaintiff and Appellant, v. NAU COUNTRY INSURANCE COMPANY, Defendant and Respondent. | F078916 (Super. Ct. No. 15CECG01013) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer and Rosemary T. McGuire, Judges.[†]

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Appellant.

Emerson Church Law and Ryan D. Libke; Mullin Hoard & Brown and Mitch D. Carthel for Defendant and Respondent.

-ooOoo-

---

[†]    Judge Snauffer issued the order compelling the parties to arbitrate and granted the petition to confirm the arbitration award; Judge McGuire issued all other orders pertinent to this appeal.

Plaintiff and appellant Sunset Ranches, Inc. (Sunset) purchased a multiple peril crop insurance policy covering 10 acres of cherry orchard crops for the 2014 harvest season. The policy was issued by defendant and respondent NAU Country Insurance Company (NAU) and reinsured by the Federal Crop Insurance Corporation (7 U.S.C. § 1503), an agency established pursuant to the Federal Crop Insurance Act (7 U.S.C. § 1501 et seq.). Sunset filed an indemnity claim, which was denied by NAU. Sunset then sued NAU, among others, alleging negligence, breach of contract, and unfair insurance practices. NAU filed a petition to compel arbitration, which was granted by the superior court. Following arbitration, the arbitrator rendered an award against Sunset, finding that NAU did not breach the contract and properly denied indemnity. The court denied Sunset's petition for an order vacating the arbitration award and granted NAU's petition for an order confirming it. Thereafter, NAU filed a motion for summary judgment or summary adjudication on the remaining state law claims for negligence and unfair insurance practices. The court granted the motion for summary adjudication as to the causes of action for negligence and unfair insurance practices on the basis of federal preemption. With respect to the cause of action for breach of contract, the court treated NAU's motion as a request for entry of judgment on confirmation of an arbitration award and granted it.

On appeal, Sunset presents three contentions. First, "the dispute was not subject to arbitration." (Capitalization omitted.) Second, "the trial court erred failing to vacate the [arbitration] award and in confirming the award." (Capitalization omitted.) Finally, state law causes of action for negligence and unfair insurance practices "do not conflict with, and are therefore not preempted by the [insurance] policy, the [Federal Crop Insurance Act], or the [Federal Crop Insurance Corporation]'s regulations." (Capitalization omitted.)

We conclude: the court properly granted NAU's petition to compel arbitration; Sunset's failure to initiate arbitration in accordance with the terms of the policy precluded

2.

judicial review of the arbitration award; and Sunset's claims for negligence and unfair insurance practices were preempted by federal law.

**FACTUAL AND PROCEDURAL HISTORY**

**I.     Relevant insurance policy provisions**

The multiple peril crop insurance policy incorporated—among other things—an earlier version of the Common Crop Insurance Policy Basic Provisions (Basic Provisions), which are set forth in 7 Code of Federal Regulations part 457.8 and "used by insurers, standard throughout the industry, when the [Federal Crop Insurance Corporation] provides reinsurance."  (*Davis v. Producers Agricultural Insurance Co.* (11th Cir. 2014) 762 F.3d 1276, 1284 (*Davis*).)  Prior to recent amendments (see 85 Fed.Reg. 76420-76428 (Nov. 30, 2020)), the Basic Provisions read in part:

> "This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act (Act) (7 U.S.C. 1501 et seq.).  All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act.  The provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours or any employee of [the United States Department of Agriculture] unless the policy specifically authorizes a waiver or modification by written agreement. . . .

> "Throughout this policy, 'you' and 'your' refer to the named insured shown on the accepted application and 'we,' 'us,' and 'our' refer to the insurance company providing insurance.  Unless the context indicates otherwise, use of the plural form of a word includes the singular and use of the singular form of the word includes the plural.  [¶] . . . [¶]

> "**14.     Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage.**

> "Your Duties:  [¶] . . . [¶]

> "(b)     Notice provisions:

> > "(1)     For a planted crop, when there is damage or loss of production, you must give us notice, by unit, within 72

3.

hours of your initial discovery of damage or loss of production (but not later than 15 days after the end of the insurance period, even if you have not harvested the crop). [¶] . . . [¶]

"(4)    All notices required in this section that must be received by us within 72 hours may be made by telephone or in person to your crop insurance agent but must be confirmed in writing within 15 days.

"(5)    If you fail to comply with these notice requirements, any loss or prevented planting claim will be considered solely due to an uninsured cause of loss for the acreage for which such failure occurred, unless we determine that we have the ability to accurately adjust the loss. If we determine that we do not have the ability to accurately adjust the loss: [¶] . . . [¶]

    "(ii)    For any claim for indemnity, no indemnity will be paid but you will still be required to pay all premiums owed. [¶] . . . [¶]

"(d)    Consent:

"(1)    You must obtain consent from us before, and notify us after you:

    "(i)    Destroy any of the insured crop that is not harvested;

    "(ii)    Put the insured crop to an alternative use;

    "(iii)    Put the acreage to another use; or

    "(iv)    Abandon any portion of the insured crop. [¶] . . . [¶]

"(3)    Failure to obtain our consent will result in the assignment of an amount of production or value to count in accordance with the Settlement of Claim provisions of the applicable Crop Provisions. [¶] . . . [¶]

4.

"**20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**

"(a)  If you and we fail to agree on any determination made by us except those specified in section 20(d)[1] or (e),[2] the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. . . .

"(1)  All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration. . . . [¶] . . . [¶]

"(b)  Regardless of whether mediation is elected:

"(1)  The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

"(2)  If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

"(3)  If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered . . . . [¶] . . . [¶]

"(c)  Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the

---

[1]  This section pertains to "good farming practices."

[2]  This section pertains to "any other determination made by FCIC or any claim where FCIC is directly involved in the claims process or directs us in the resolution of the claim."

AAA, you and we have the right to judicial review of any decision rendered in arbitration.  [¶] . . . [¶]

"(f)    In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding.  Conflicts between this policy and any state or local laws will be resolved in accordance with section 31.  If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.  [¶] . . . [¶]

"(h)    Except as provided in section 20(i), no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with section 26.

"(i)    In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. . . . [¶] . . . [¶]

## "31.    Applicability of State and Local Statutes.

"If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail.  State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.  [¶] . . . [¶]

## "33.    Notices.

"(a)    All notices required to be given by you must be in writing and received by your crop insurance agent within the designated time unless otherwise provided by the notice requirement.  Notices required to be given immediately may be by telephone or in person and confirmed in writing.  Time of the

notice will be determined by the time of our receipt of the written notice. . . ."

## II. Denial of Sunset's indemnity claim

In a letter dated July 17, 2014, regarding "2014 Cherry Notice of Loss – Policy #3303818-14," NAU's claims manager John Wienstroer notified Sunset that its indemnity claim "cannot be approved." He detailed:

"Timely Notice of Loss –

"A notice of loss was not filed timely within the [Basic Provisions] and Cherry Crop Provisions. The required time frame to submit a notice of loss or damage for a cherry claim is within 3 days after the date harvest should have started if the crop will not be harvested, or 15 days prior to the beginning of harvest if you do harvest. We received a notice of loss for your cherry policy on June 18, 2014, well after the normal harvest period for early season Brook/Tulare variety cherries, which are generally harvested in late April into early May.

"Destroyed Without Consent –

"Based on our claim inspection on 6/30/14, and our conversations with you, we confirmed that the cherry crop was dropped on the ground and disked in. By not seeing the crop, we are unable to determine if a loss is evident and to establish the production to count, which inhibits our ability to accurately adjust the loss. Considering the crop was put to another use without our consent, the crop will be appraised at the guarantee, meaning no loss is payable."

Wienstroer quoted section 20(a) of the Basic Provisions and advised: "Should you not agree with the determinations made by us with respect to your claim, you also have the right to request mediation or arbitration."

## III. Sunset's complaint

Sunset filed its complaint on March 27, 2015. It named the following parties as defendants: Joseph M. Guerriero, an insurance agent; Central Valley Crop Insurance;

7.

United Valley Insurance Agency; United Valley Insurance Services, Inc.; and NAU.[3]

Under the "**PARTIES AND VENUE**" heading, Sunset identified Guerriero as "the agent, servant and employee of" Central Valley Crop Insurance and the United Valley Insurance entities. Sunset also alleged, on information and belief, that Guerriero, Central Valley Crop Insurance, and the United Valley Insurance entities "were the agent, servant or employee of" NAU.

Under the "**GENERAL ALLEGATIONS**" heading, Sunset asserted:

"8.     In May, 2014, because of adverse weather conditions, no harvestable crop was generated on the ten acres of cherries insured under the policy, . . . and Defendant, Joseph Gu[]erriero, inspected the Plaintiff's cherry orchard and crop. Plaintiff informed Defendant Gu[]erriero, that it would be impossible to harvest any crop because of the adverse weather conditions affecting cherry production and that Plaintiff wished to file a Notice of Loss or Claim of Loss under [the] policy issued by NAU . . . . Defendant Gu[]erriero agreed to and subsequently informed Plaintiff on May 29, 2014, that he had filed a Notice of Loss or claim with NAU . . . and further advised Plaintiff that Plaintiff should remove what crop was produced and destroy that part of the crop that could not be harvested and sold.

"9.     In June, and again in July, 2014, Plaintiff demanded the proceeds of the multiple peril crop insurance policy . . . from NAU . . . through [Central Valley Crop Insurance and the United Valley Insurance entities] and NAU . . . refused to pay those policy benefits based upon the assertion that no claim of loss had been filed with or presented to NAU . . . by Plaintiff, Gu[]erriero, or [Central Valley Crop Insurance and the United Valley Insurance entities], and because Plaintiff had destroyed the crop as he had been instructed to do by Defendant Gu[]erriero. Defendant NAU . . . issued a written determination refusing to pay Plaintiff the policy benefits . . . ."

Sunset stated causes of action for negligence, breach of contract, and unfair insurance practices. As to the cause of action for negligence against Guerriero, Central Valley Crop Insurance, and the United Valley Insurance entities, Sunset claimed:

---

[3]     Guerriero, Central Valley Crop Insurance, United Valley Insurance Agency, and United Valley Insurance Services, Inc., are not parties to this appeal.

8.

"12.    On information and belief, Defendant Gu[]erriero and [Central Valley Crop Insurance and the United Valley Insurance entities] negligently, carelessly, and unlawfully failed to submit any claim or notice of loss as required by the terms of the policy . . . to NAU . . . and negligently, carelessly and unlawfully, on information and belief, falsely informed Plaintiff that Plaintiff could destroy the crop insured under the policy.

"13.    As a direct and proximate result of the negligence of [Central Valley Crop Insurance and the United Valley Insurance entities] and of Defendant Gu[]erriero, . . . NAU . . . refused to pay the policy benefits to Plaintiff for the loss of Plaintiff's cherry crop based upon (1) the asserted failure of Plaintiff to present any claim or Notice of Loss; and (2) the asserted improper destruction of the crop by Plaintiff at the directions of Defendant Gu[]erriero and [Central Valley Crop Insurance and the United Valley Insurance entities].

"14.    As a proximate result of the negligence, carelessness and unlawful conduct of Defendants Gu[]erriero and of [Central Valley Crop Insurance and the United Valley Insurance entities], Plaintiff sustained damages in the sum of not less than $79,070 the amount of the guarantee of production provided for by the policy, . . . in addition to consequential damages, according to proof."

As to the cause of action for breach of contract, which was "**Against Defendant NAU**

. . . **Only**," Sunset claimed:

"17.    On or about May 29, 2014, Defendant NAU . . . breached the agreement by refusing to pay the policy guarantee of the crop production set by the policy, . . . although the failure of production was the result of adverse weather conditions and Defendant's Agent, Gu[]erriero, or [Central Valley Crop Insurance and the United Valley Insurance entities], and each of them, received Notice of Loss or of a claim under the policy and, through its agents and employees inspected the crop prior to the date on which the crop was destroyed.  [¶] . . . [¶]

"19.    Plaintiff suffered damages proximately caused by Defendant's breach of the agreement, the insurance policy, . . . in an amount not less than $79,070, the amount of the guarantee of production provided for by the terms of the policy in the event of the failure of the crop by virtue of adverse weather conditions.

"20.    Plaintiff is entitled to an award of attorneys fees by the terms of the agreement, the multiple peril crop insurance policy . . . ."

9.

As to the cause of action for unfair insurance practices against NAU, Sunset claimed:

"22.    As a result of the Defendant, NAU['s] . . . refusal to pay Plaintiff's policy benefits, Plaintiff has been forced to initiate this action against both Defendant NAU . . . and Defendants Gu[]erriero and [Central Valley Crop Insurance and the United Valley Insurance entities], and each of them to recover the policy benefits to which Plaintiff is entitled.

"23.    In addition to the refusal to pay, Defendant NAU . . . failed to conduct any prompt, fair or reasonable and adequate investigation of Plaintiff's claim, or any investigation whatsoever, has failed to pay the claim although liability has become reasonably clear, has failed to acknowledge and reasonably respond promptly to communications from Plaintiff with respect to Plaintiff's claim, has failed to evaluate the claim objectively and has ignored evidence supporting the payment of claim, all in violation of the California Insurance Code and regulations of the Insurance Commissioner.

"24.    Plaintiff has performed all obligation under the policy of insurance required on its part to be performed.  Defendant NAU . . . breached the insurance policy, and the implied covenant of good faith and fair dealing arising out of that policy by virtue of its conduct as described in this Complaint.

"25.    As a direct and proximate result of the breach of the policy and of the breach of the covenant of good faith and fair dealing, Plaintiff suffered and incurred general and/or special damages including, without limitation, lost interest on the monies payable to Plaintiff under the policy, the monies payable under the policy, attorney's fees and costs incurred to obtain the policy benefits, and general damages to be proved at the time of trial.

"26.    Plaintiff is informed and believes and thereon alleges that Defendant NAU . . . intentionally engaged in a course of conduct intended to oppress the Plaintiff and to dissuade Plaintiff from seeking benefits due under the policy of insurance issued by it.

"27.    The refusal of Defendant NAU . . . to carry out its obligations under the insurance policy to investigate and pay the Plaintiff's claim was done with a conscious disregard of the rights of the Plaintiff to receive the benefits due to the Plaintiff under the policy of insurance and said Defendant's conduct was intended to cause injury to Plaintiff or was despicable conduct carried on by said Defendant with a wil[l]ful and

10.

conscious disregard of Plaintiff's rights, with the intention to deprive Plaintiff of property, legal rights or otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code §3294, thereby entitled Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendant NAU . . . ."

## IV. NAU's petition to compel arbitration

In lieu of an answer, NAU—pursuant to Code of Civil Procedure section 1281.2—filed a petition to compel arbitration dated May 22, 2015, and an amended petition to compel arbitration dated June 3, 2015. Sunset opposed the petition.

On September 14, 2015, following a hearing on the matter, the superior court issued an order compelling Sunset and NAU to arbitrate pursuant to the arbitration agreement and staying the civil action. It reasoned:

> "Section 20 [of the Basic Provisions] requires arbitration of a determination made by NAU. The 'determination' that Plaintiff here seeks review of is the denial of the claim by NAU based on its assertion that no claim of loss had been filed or presented to NAU by Plaintiff or [Central Valley Crop Insurance and the United Valley Insurance entities], and because Plaintiff had destroyed the crop as he had been instructed to do by Defendant Joseph Michael Guerriero. 'Defendant NAU . . . issued a written determination refusing to pay Plaintiff the policy benefits . . . .' [Citation.]
>
> "Under federal law, which governs the crop insurance policy and the arbitration clause it contains, on a motion to compel arbitration, a court 'may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.' [Citation.] The crop insurance policy attached to the complaint and the petition to compel arbitration, is valid and the arbitration clause covers this dispute."

In a letter to NAU's counsel dated October 9, 2015, Sunset's counsel indicated that this correspondence "will initiate an arbitration" between the parties. In a letter to the American Arbitration Association dated November 13, 2015, Sunset's counsel reiterated that arbitration "is something required by court order" and "is not a proceeding demanded by Sunset."

## V. Arbitration

The arbitration took place on October 18, 2016.  Robert Scribner served as the arbitrator.  At the outset, the parties stipulated that "this arbitration is not the proper forum for determining damages based on any negligence or bad faith claims, but jurisdiction is limited solely to a determination of indemnity under the express terms of the policy."  Sunset's owner and president Charles Mosesian as well as Wienstroer testified.  Exhibits were also submitted.

In a "**FINAL AWARD OF ARBITRATOR**" dated December 19, 2016, Scribner found, among other things, that the Code of Federal Regulations required Sunset to leave the crop intact and not destroy or abandon it prior to inspection and appraisal by NAU.  To do otherwise, required the consent of NAU.  Scribner noted it was "undisputed that no consent was requested or obtained, verbal or written, and that [Sunset] removed, destroyed or abandoned the damaged crop prior to an inspection and appraisal by NAU."  Scribner concluded that Sunset "failed to comply with the express terms of the policy," "its claim for indemnity was properly denied for the reasons stated in the Denial Letter," and it "shall take nothing by virtue of its claims asserted in this action."  He added that "the State Law Claims are not within the scope of this award" and "this award is without prejudice as to those claims."

Thereafter, Sunset filed a petition for an order vacating the award while NAU filed a petition for an order confirming it.  On July 11, 2017, following a hearing on the matter, the court denied Sunset's petition and granted NAU's petition.  It concluded that Sunset could not "resolve the dispute through judicial review" because "arbitration was not initiated 'in accordance with section 20(b)(1) [of the Basic Provisions],' that is, by the insured."

## VI. NAU's motion for summary judgment or summary adjudication

On or around August 13, 2018, NAU filed a motion for summary judgment or, in the alternative, summary adjudication to resolve any remaining state law claims against

NAU.  It argued, among other things, that "federal law and the [Basic Provisions] prohibit Plaintiff from seeking damages."  Following a December 18, 2018 hearing, the court adopted its tentative ruling, which (1) granted the motion for summary adjudication as to the causes of action for negligence and unfair insurance practices; and (2) treated the motion as a request for entry of judgment on confirmation of the arbitration award with respect to the cause of action for breach of contract and granted it.  Regarding the cause of action for breach of contract, the court remarked:

> "First of all, the present motion presents an unusual procedural scenario, in that plaintiff's claims against N[AU] were previously sent to binding arbitration pursuant to the terms of section 20 of the [Basic Provisions].  The court's order compelling the parties to attend arbitration does not make any distinction between the different claims that plaintiff alleged against N[AU], or state that only plaintiff's breach of contract claim was to be arbitrated.  [Citation.]  The parties attended arbitration in October of 2016, and the arbitrator issued his final decision on December 19, 2016, denying plaintiff's breach of contract claim.  [Citation.]  The court then confirmed the arbitrator's award and denied plaintiff's motion to vacate the award.  [Citation.]  The court also denied plaintiff's motion for reconsideration of the order confirming the award and denying the motion to vacate.  [Citation.]

> "Thus, under normal circumstances, the only step left for the court would be to enter judgment pursuant to the terms of the arbitration award, as provided under Code of Civil Procedure 1287.4. . . .  Here, however, it appears that the parties stipulated before the arbitrator that they were only litigating the breach of contract claim in the arbitration proceeding.  [Citation.]  [¶] . . . [¶]

> "Therefore, while the court had previously ordered the parties to arbitrate their entire dispute, the arbitrator did not actually adjudicate two of the three causes of action alleged in the complaint, namely the negligence and unfair insurance practices/bad faith claims.  It is unclear whether the parties had the power to stipulate not to litigate two out of the three claims, even after the court had ordered them to arbitrate their entire case.  Nor is it clear that the arbitrator had the power to allow such a stipulation and decline to resolve all of the claims.

13.

"In any event, the breach of contract claim was clearly disposed of by the arbitrator in his final award, as he ruled that plaintiff had not submitted a timely written notice of loss within 72 hours as required by the crop insurance policy, and had destroyed his crop without first obtaining N[AU]'s consent. [Citation.] The court has already granted its order confirming the award. Thus, defendant is entitled to a judgment disposing of the second cause of action for breach of contract. . . . Since the claim has already been resolved by the arbitrator, however, it would not be proper for this court to grant summary adjudication of the claim as well. Instead, the court intends to treat the motion for summary adjudication of the second cause of action as a motion for entry of judgment on the arbitrator's decision on the second cause of action pursuant to Code of Civil Procedure section 1287.4, and grant the motion."

Regarding the causes of action for negligence and unfair insurance practices, the court concluded that "[a]llowing plaintiff to pursue its state law claims for extra-contractual damages would conflict with the [Federal Crop Insurance Act], its regulations, and the language of the [Basic Provisions], which expressly limit the scope of damages and claims." It cited, among other things, title 7 United States Code section 1506(l), 7 Code of Federal Regulations part 400.352(a) and (b)(4), and section 20(i) of the Basic Provisions.

Plaintiff filed a timely notice of appeal on March 1, 2019.

## DISCUSSION

### I. The superior court's order granting NAU's petition to compel arbitration

Both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) "recognize ' " 'arbitration as a speedy and relatively inexpensive means of dispute resolution' " and are intended " 'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing' " ' " (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*)). "The fundamental policy underlying both acts 'is to ensure that arbitration agreements will be enforced in accordance with their terms.' [Citations.]" (*Ibid.*, italics omitted.)

"A party who claims that there is an applicable written arbitration agreement may petition the superior court for an order compelling the parties to arbitrate." (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 184-185, citing Code Civ. Proc., § 1281.2; see *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174, 177 [Code Civ. Proc., § 1281.2 applies by default in state court because Congress intended for 9 U.S.C. § 4 to apply in federal court].) " 'In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint filed by the party refusing arbitration . . . .' [Citation.]" (*Rice v. Downs*, *supra*, at p. 185.) " '[T]he decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is "broad" or "narrow." ' [Citation.]" (*Id.* at p. 186.) "Under California law, ordinary rules of contract interpretation apply to arbitration agreements." (*Hotels Nevada, LLC v. Bridge Banc, LLC* (2005) 130 Cal.App.4th 1431, 1435; see *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384 ["[The United States Supreme Court] has stated that state contract rules generally govern the construction of arbitration agreements."].) In addition, given both the Federal Arbitration Act and the California Arbitration Act reflect a strong public policy in favor of arbitration agreements (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195), "any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration" (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 (*Coast Plaza*)). (See *Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 ["In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute."].)

"A trial court order compelling arbitration ordinarily is reviewable only after the arbitration is complete and a party appeals from the resulting judgment." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 888.) "The standard of review of an order

15.

compelling arbitration is substantial evidence, where the trial court's decision was based upon the resolution of disputed facts, or de novo where the facts are not in conflict. [Citation.]" (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1360.)

Here, as previously mentioned, the multiple peril crop insurance policy incorporated the Basic Provisions. Section 20(a) of the Basic Provisions specified that a "disagreement" as to "any determination made by" NAU—with limited exceptions—that cannot be resolved through mediation must be arbitrated. Section 20(a)(1) reiterated that "[a]ll disputes involving determinations made by" NAU—again, with limited exceptions—"are subject to mediation or arbitration." "That contractual language is both clear and plain. It is also very broad." (*Coast Plaza*, *supra*, 83 Cal.App.4th at p. 684; see, e.g., *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 732 (*Bigler*) [" 'I understand and agree that any dispute involving the School, except with respect to my obligation to pay tuition or fees, shall be resolved by arbitration.' "]) "We interpret this language to mean just what it says." (*Coast Plaza*, *supra*, at p. 684; see *ibid.* ["In interpreting an unambiguous contractual provision[,] we are bound to give effect to the plain and ordinary meaning of the language used by the parties."].)

The outstanding question is whether Sunset's lawsuit challenged a determination made by NAU. Sunset contends that "this case never should have been submitted to an arbitrator" because it "only sought to enforce its rights under the law of agency to hold NAU responsible for the actions or inaction of [the insurance agent] Guerriero" and "never challenged any determination by NAU." We disagree.

In a July 17, 2014 letter, Wienstroer informed Sunset that its indemnity claim would not be approved because it did not timely file a notice of loss and destroyed the insured crop without consent, both of which violated the terms of the insurance policy. In its complaint, under the "**GENERAL ALLEGATIONS**" heading, Sunset asserted: (1) it had been advised by Guerriero that "he had filed a Notice of Loss or claim with NAU" on its behalf; (2) it had been advised by Guerriero to "remove what crop was

produced and destroy that part of the crop that could not be harvested and sold"; and (3) NAU "issued a written determination refusing to pay [it] the policy benefits." As to the cause of action for negligence, Sunset argued that Guerriero's failure to submit the notice of loss and instruction to destroy the crop resulted in NAU's denial of indemnity. As to the cause of action for breach of contract, Sunset argued that NAU "breached the agreement by refusing to pay the policy guarantee of the crop production set by the policy." As to the cause of action for unfair insurance practices, Sunset argued that NAU "breached the insurance policy" and "the implied covenant of good faith and fair dealing arising out of that policy" by failing to "conduct any prompt, fair or reasonable and adequate investigation of Plaintiff's claim, or any investigation whatsoever"; failing to "pay the claim although liability has become reasonably clear"; failing to "acknowledge and reasonably respond promptly to communications from Plaintiff with respect to Plaintiff's claim"; failing to "evaluate the claim objectively"; and "ignor[ing] evidence supporting the payment of claim."

It is clear that Sunset did not "only" seek to impose vicarious liability on NAU for Guerriero's purported negligence. Sunset directly challenged NAU's denial of indemnity via its claims for breach of contract and unfair insurance practices. (See *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1033 ["Although an action for bad faith breach of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair dealing derives from and exists solely because of the contractual relationship between the parties."].) Furthermore, Sunset predicated its negligence claim on Guerriero's supposed misrepresentations pertaining to the submission of the notice of loss and the destruction of the crop. In other words, it impugned the factual bases of NAU's denial. (See *Bigler, supra*, 213 Cal.App.4th at p. 739 ["It is the dispute, not the named cause of action, that is the focus of [the] inquiry."].) Because Sunset's complaint "centers around and is clearly based upon" its disagreement with NAU's determination (*Coast Plaza, supra*, 83 Cal.App.4th at p. 684), the court's order granting NAU's petition

17.

to compel arbitration was warranted. "To hold otherwise would enable a party to frustrate any agreement to arbitrate simply by changing the manner or form in which it frames its claims." (*Bos Material Handling, Inc. v. Crown Controls Corp.*, *supra*, 137 Cal.App.3d at p. 106.)[4]

## II.     The superior court's denial of Sunset's petition for an order vacating the arbitration award

Next, Sunset contends the court should have granted its petition for an order vacating the arbitration award. However, as the court emphasized, Sunset's failure to initiate arbitration in accordance with the terms of the insurance policy precluded judicial review of the award.

"In order to qualify for reinsurance through the [Federal Crop Insurance Corporation], the policies written by approved private insurers must comply with the [Federal Crop Insurance Act] and its accompanying regulations. Consequently, '[t]he [Federal Crop Insurance Act] generally establishes the terms and conditions of insurance, . . . even though the crop insurance policy is between the farmer and an approved insurance provider.' Indeed, 7 C.F.R. § 457.8 includes text for [Basic Provisions] used by insurers, standard throughout the industry, when the [Federal Crop Insurance Corporation] provides reinsurance." (*Davis*, *supra*, 762 F.3d at p. 1284, fn. omitted.) Again, "[t]he fundamental policy underlying [the Federal Arbitration Act and the California Arbitration Act] 'is to ensure that arbitration agreements will be enforced in accordance with their terms.' [Citations.]" (*Avery*, *supra*, 218 Cal.App.4th at p. 59, italics omitted.)

Here, section 20(b)(1) of the Basic Provisions specified that arbitration must be initiated "within one year of the date" NAU rendered the challenged determination. Section 20(b)(2) added: "If you fail to initiate arbitration in accordance with

---

[4]     We need not address NAU's alternative argument that we may choose not to review the lower court's order and, instead, dismiss Sunset's appeal.

18.

section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review." As defined by the policy, "you" referred to the insured, i.e., Sunset. Sections 20(f) and 31 stated that the terms of the insurance policy "are binding" "[i]n any mediation, arbitration, appeal, administrative review, reconsideration or judicial process" and prevail over conflicting state and local laws.[5]

NAU informed Sunset about the denial of indemnity and the right to request arbitration in a letter dated July 17, 2014. Sunset did not demand arbitration. Instead, it filed a complaint on March 27, 2015. Thereafter, NAU petitioned the court to compel arbitration. On September 14, 2015, the court issued its order compelling the parties to arbitrate. In a letter to NAU's counsel dated October 9, 2015, Sunset's counsel stated that this correspondence "will initiate an arbitration" between the parties. In its appellate brief, Sunset similarly maintains that it "initiated the arbitration on October 9, 2015, by sending a letter to American Arbitration Association, providing a copy of the Court's Order compelling arbitration and the required filing fee." Even assuming, arguendo, that

---

[5] We point out that the Federal Crop Insurance Corporation recently amended section 20(a) and section 20(b)(1) of the Basic Provisions to further clarify that "the responsibility is on the [agricultural] producer to start dispute resolution through arbitration when the producer disagrees with an [approved insurance provider's] determination." (85 Fed.Reg. 76424 (Nov. 30, 2020).) Section 20(a) reads:

"If you do not agree with any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If the disagreement cannot be resolved through mediation, or you and we do not agree to mediation, you must timely seek resolution through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by [the Federal Crop Insurance Corporation] for this purpose. . . ." (7 C.F.R. § 457.8.)

Section 20(b)(1) reads:

"You must initiate arbitration proceedings within 1 year of the date we denied your claim or rendered the determination with which you disagree, whichever is later . . . ." (7 C.F.R. § 457.8.)

Sunset somehow initiated arbitration on this date, this occurred more than a year after NAU rendered the challenged determination. Because Sunset did not comply with section 20(b) of the Basic Provisions, it could not petition the court for an order vacating the arbitration award.

**III. The superior court's order granting summary adjudication as to Sunset's claims for negligence and unfair insurance practices**

Finally, Sunset contends that its claims for negligence and unfair insurance practices were not preempted by federal law. "We review de novo the trial court's grant of summary judgment on purely legal issues such as federal preemption." (*Valencia v. SCIS Air Security Corp.* (2015) 241 Cal.App.4th 377, 383; accord, *Physicians Committee for Responsible Medicine v. McDonald's Corp.* (2010) 187 Cal.App.4th 554, 568.)

" 'The Supremacy Clause provides that "the Laws of the United States" (as well as treaties and the Constitution itself) "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." [Citation.] Congress may consequently pre-empt, i.e., invalidate, a state law through federal legislation.' " (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 704, italics omitted.) Moreover, "[a] federal regulation may have the same preemptive effect as a federal statute when the promulgating agency acted within the scope of its congressionally delegated authority in promulgating the regulation." (*People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 639-640, citing *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 950-951.)

"As the United States Supreme Court has explained, federal law preempts state law in three circumstances. 'First, Congress can define explicitly the extent to which its enactments pre-empt state law. [Citation.] Pre-emption fundamentally is a question of congressional intent, [citation] and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one. [¶] Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field

20.

that Congress intended the Federal Government to occupy exclusively. . . . [¶] Finally, state law is pre-empted to the extent that it actually conflicts with federal law.' [Citation.]" (*McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 981; see *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 815 ["A state law actually conflicts with federal law 'where it is impossible for a private party to comply with both state and federal requirements [citation], or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' "].)

The purpose of the Federal Crop Insurance Act is "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." (7 U.S.C. § 1502(a).) To accomplish these objectives, Congress created the Federal Crop Insurance Corporation, an agency within the United States Department of Agriculture. (See *id.*, § 1503.) The Federal Crop Insurance Corporation "may insure, or provide reinsurance for insurers of, producers of agricultural commodities grown in the United States under 1 or more plans of insurance determined by the Corporation to be adapted to the agricultural commodity concerned." (*Id.*, § 1508(a)(1).) The agency is also empowered to "issue regulations, necessary in the conduct of its business" (*id.*, § 1506(l)) and "issue such regulations as are necessary to carry out" the Federal Crop Insurance Act (7 U.S.C. § 1506(o)). As previously mentioned, to qualify for reinsurance through the Federal Crop Insurance Corporation, policies written by an approved private insurer must comply with the Federal Crop Insurance Act and its implementing regulations. (*Davis*, *supra*, 762 F.3d at p. 1284.)

The Federal Crop Insurance Act expressly preempts inconsistent state law:

> "State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations." (7 U.S.C. § 1506(l).)

21.

Likewise, 7 Code of Federal Regulations part 400.352 provides:

> "(a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.
>
> "(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not: [¶] . . . [¶]
>
> "(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (*Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving payment in an amount that is less than the amount to which the insured was entitled*) . . . ." (Italics added.)

In the instant case, sections 20(i) and 31 of the Basic Provisions—again, taken directly from the text then set forth in 7 Code of Federal Regulations part 457.8—specified:

> "In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from [the Federal Crop Insurance Corporation] that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by [the Federal Crop Insurance Corporation] and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. . . . [¶] . . . [¶]
>
> "If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy."

The record establishes that Sunset purchased a multiple peril crop insurance policy that was subject to the Federal Crop Insurance Act and its implementing regulations. In view of section 20(i) of the Basic Provisions, Sunset was required to obtain a determination from the Federal Crop Insurance Corporation before it could recover damages, fees, or other expenses in court. (See *Wanamaker Nursery, Inc. v. John Deere Risk Protection, Inc.* (E.D. Tenn. 2019) 364 F.Supp.3d 839, 848-849; see also *Flynt v. California Gambling Control Com.* (2002) 104 Cal.App.4th 1125, 1132 ["Lower federal court decisions on federal questions, while not binding, are persuasive and entitled to great weight in state court."].) "It is uncontroverted that [Sunset] failed to do so . . . ." (*Wanamaker Nursery, Inc. v. John Deere Risk Protection, Inc.*, *supra*, at p. 849.) Therefore, the causes of action for negligence and unfair insurance practices were preempted. Accordingly, we affirm the court's order granting summary adjudication as to these claims.

## DISPOSITION

The judgment of the superior court is affirmed. Costs are awarded to defendant and respondent NAU Country Insurance Company.

DETJEN, J.

WE CONCUR:

HILL, P.J.

FRANSON, J.

23.